IN THE COURT OF APPEALS OF TENNESSEE

# FILED

**October 19, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**
AT JACKSON

_____

**EUGENE BROOKS and**
**VERDELLE BROOKS,**
**Husband and Wife,**

    Plaintiffs-Appellants,

                                         Hardeman Chancery No. 9980
vs.                             C.A. No. 02A01-9903-CH-00066

**T. R. LAMBERT, SR. and VADIE**
**LAMBERT, Husband and wife,**
**and TIM LAMBERT and**
**GLENDA LAMBERT, Husband**
**and Wife,**

    Defendants-Appellees.

_____

FROM THE HARDEMAN COUNTY CHANCERY COURT
THE HONORABLE DEWEY C. WHITENTON, CHANCELLOR

Erich M. Shultz of Memphis
For Appellants

David M. Livingston of Brownsville
For Appellees

***AFFIRMED AND REMANDED***

Opinion filed:

**CONCUR:**

**ALAN E. HIGHERS, JUDGE**

**HOLLY KIRBY LILLARD, JUDGE**

This appeal results from a dispute concerning ownership of real property. Although the title to the property was confirmed in plaintiffs, Eugene Brooks and wife, Verdelle Brooks, and they were awarded possession of the property, they appeal the trial court's order as to the damage judgment against defendants, T.R. Lambert, Sr., and wife, Vadie Lambert; Tim Lambert and wife, Glenda Lambert.

In 1982, Eugene Brooks, and wife, Verdelle Brooks, purchased a five acre tract of land in Hardeman County from Northwestern American, Inc. Northwestern American, Inc. originally acquired a 90.70 acre tract of real estate on July 8, 1974 from Tyson Vickers after Mr. Vickers had acquired the interest of the other Vickers heirs. At the time the plaintiffs inspected and purchased the 5.10 acre tract, it was unenclosed and unimproved woodland. From the time of the recording of their deed in 1982, the plaintiffs claimed ownership, paid the real estate taxes, and treated the 5.10 acres of property as their own. The plaintiffs visited periodically to inspect the property. At no time prior to 1992 did the plaintiffs see any evidence of a competing claim of ownership on the 5.10 acres of real estate.

In 1992, defendants, Tim Lambert, and wife, Glenda Lambert, obtained a deed from T.R. Lambert, Sr. and Vadie Lambert, for a ten acre tract of land that included land to the east and west of Van Buren Road. The 5.10 acres of land to the west of Van Buren road was the land claimed by the Brookses. T.R. and Vadie Lambert had purchased two tracts of property in 1952 of which they deeded the ten acres to Tim and Glenda Lambert. The legal description in the warranty deed given to Tim and Glenda Lambert was based on a

survey of Clarence Goodrum, Jr., Registered Land Surveyor, dated June 1, 1992. After the defendants, Tim and Glenda Lambert, filed their deed, they placed a mobile home on the portion of the property on the northwestern side of Van Buren Road (the 5.10 acres), installed a well and a culvert, built a driveway, and erected a shed. Upon learning of the above action, the Brookses mailed a letter to the Lamberts asserting their title. When the Lamberts refused to move, the Brookses brought the instant action.

At trial, Mr. Michael Gnall, Jr., testified for the plaintiffs. Gnall performed a survey in 1974, when Northwestern American was in the process of purchasing the 90.20 acres of property from Tyson Vickers. He testified that according to his survey and based on his search of the record deeds, including those of the Lamberts' predecessors in title, the defendant, T.R. Lambert, Sr., did not own the 5.10 acre tract in issue, but that he did own other tracts located to the east and southeast of the 5.10 acres. Mr. Gnall also testified that the defendant, T.R. Lambert, Sr., was aware of the conveyance from Tyson Vickers to Northwestern American and specifically agreed on the location of the boundary lines of the 90.20 acres of property being conveyed. The defendants presented evidence at trial that T.R. Lambert, Sr., hired Wayne Yates, a licensed land surveyor to survey all of his property in 1979, and he concluded the 5.10 acres was owned by the Lamberts.

After a nonjury trial, the trial court found that the land was owned by the plaintiffs, that the plaintiffs and their predecessors in title, Northwestern American, had at least constructive possession of the 5.10 acres from 1974 until 1992, that the defendants, Tim and Glenda Lambert, have not adversely held the property for the requisite period of time, nor can they tack any holding to the holding of T.R. Lambert, Sr. and Vadie Lambert. These findings are not contested.

The court awarded the plaintiffs $50.00 per month as a fair rental value for a period of forty months. The court denied plaintiffs' claim for libel of title and attorney fees, however, finding that the defendants actions "in reliance on the survey conducted by Clarence Goodrum were made in good faith and were not malicious."

Plaintiffs have appealed and present the following issues for review:

1. Did the Chancellor err in denying Plaintiffs' claim for libel of title?

2. Did the Chancellor err in denying award of Plaintiffs' legal fees and expenses?

3. Did the Chancellor err in awarding the fair rental value of the property for only forty months when the evidence was clear and uncontroverted that Defendants occupied the land for sixty-nine months?

Since this case was tried by the trial court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

In plaintiffs' first issue, they assert that the trial court erred in not allowing plaintiffs to recover for libel of title. Slander or libel of title was first recognized as a cause of action in *Smith v. Gernt*, 2 Tenn. Civ. App. 65, 79-80 (1911). *Harmon v. Shell*, No.

01-A-01-9211-CH-00451, 1994 WL 148663 (Tenn. App. M.S. Apr. 27, 1994) To establish a successful claim for slander of title, a plaintiff must prove:

> (1) that it has an interest in the property, (2) that the defendant published false statements about the title to the property, (3) that the defendant was acting maliciously, and (4) that the false statements proximately caused the plaintiff a pecuniary loss. (citations omitted).

*Id.* at *4. Statements made with reckless disregard of the property owner's rights or with reckless disregard as to whether the statements are false may be malicious within the scope of a libel of title action. *Id.* (citing *Gernt*, 2 Tenn. Civ. App. at 79-80). To assert this cause of action, the plaintiff must allege "malice ... in express terms or [by] any such showing of facts as would give rise to a reasonable inference that [the defendant acted maliciously.]" *Waterhouse v. McPheeters*, 176 Tenn. 666, 669, 145 S.W.2d 766, 767 (1940). A good faith, but erroneous, claim of title does not constitute a cause of action for libel of title. *Ezell v. Graves*, 807 S.W.2d 700, 704 (Tenn. App. 1990).

The trial court found that the actions of the defendants, Tim and Glenda Lambert, were not malicious. The plaintiffs assert that the trial court's ruling was contrary to this Court's ruling in *Ezell*. The plaintiffs argue that the chancellor misconstrued malice to mean ill will or spite and, therefore, rejected their claim.

The plaintiffs argue that notice of an underlying interest before filing a deed is sufficient to establish malice. Further, plaintiffs contend that in finding that defendants acted in good faith, the Chancellor erred in that good faith is not consistent with the knowledge that defendants had before them at the time of their action. The plaintiffs submit that the defendants had notice of an underlying interest before filing their deed, and that this notice is sufficient to establish malice. We disagree. *Ezell* states that a good faith claim of title does not constitute malice.

Considering the entire body of proof, we cannot say that the evidence preponderates against the trial court's finding that the defendants actions were in good faith and not malicious. The trial court evidently considered Wayne Yates' testimony. Moreover,

Tim Lambert testified that the Lambert family had used the land for hunting since he was a small child. Further, it appears undisputed by the record that prior to accepting the deed from T.R. Lambert, Sr., Tim Lambert did not know that Eugene and Verdelle Brooks claimed the land in dispute.

The second issue on appeal involves the denial of plaintiffs' legal fees and expenses. Tennessee courts follow the "American Rule" with regard to awarding attorney's fees. Although attorney's fees are not normally awarded in civil litigation absent a "contract, statute or recognized ground in equity," *State ex rel. Orr v. Thomas*, 585 S.W.2d 606, 607 (Tenn. 1979), an exception to the general rule exists in cases involving libel of title. *Ezell v. Graves*, 807 S.W.2d 700, 703 (Tenn. App. 1990). In *Ezell*, the Court explained the rationale for permitting recovery in a case involving libel of title:

> When a cloud has been cast upon the title to

> property. . . . The sole way of dispelling another's wrongful assertion of title is by hiring an attorney and litigating. If the defamed party were to simply speak out in denial, as he might with a character attack, he could risk completely losing title by adverse possession. The plaintiffs here were forced into court by the defendants' actions. They were required to hire counsel, take depositions, arrange for court reporters, and run up numerous other expenses. These costs, which represented the only possible course of action to clear their title, flow directly and proximately from the defendants' conduct.

*Id.* at 703.

Plaintiffs contends that *Ezell* stands for the proposition that one who claims an interest in realty which conflicts with a recorded deed is obligated to protect that interest and, therefore, legal fees should be awarded. While the proper forum for disputes involving the ownership of land is the courts, to adopt the plaintiffs' argument would require an award of legal fees in all cases involving property disputes. This theory is not consistent with the " American Rule."

The exception to the "American Rule" for libel of title actions is a narrow one. Litigants who are successful in a libel of title action may recover reasonable expenses incurred in that suit. *Ezell*, 807 S.W.2d at 703. However, the litigant must prove the elements of a libel of title action, including malice, before an award of legal fees is appropriate. In the instant case, the trial court correctly found plaintiffs' libel of title action lacking the necessary elements.

The third issue on appeal is whether the chancellor erred in awarding the fair rental value of the property for only forty months when the defendants occupied the land for sixty-nine months. The plaintiffs stipulated that the fair rental value of the property was fifty dollars per month. The chancellor apparently reduced the award from sixty-nine months ($3,450.00) to forty months ($2,000.000) in consideration of the improvements made on the land by Tim Lambert. Lambert testified that he had placed a permanent well on the property, removed stumps from and graveled the driveway, and improved the general appearance of the property. Tim Lambert further testified that he had improved the property

by "several thousand dollars." Tim Lambert's testimony was undisputed as the plaintiff did not put on any evidence regarding the improvements made to the land or question Lambert's cost estimate of the improvements. The chancellor undoubtedly accredited this testimony, especially in the absence of any proof from plaintiffs that Lambert's efforts did not in fact improve the value of the property. The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *In re Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997). Based on the foregoing, we conclude that the evidence does not preponderate against the findings of the trial court. T.R.A.P. 13(d).

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as are necessary. Costs of the appeal are assessed against the appellants.

_____

**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

_____
**ALAN E. HIGHERS, JUDGE**

_____
**HOLLY KIRBY LILLARD, JUDGE**