IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 6, 2022 Session

## E. JOSEPH ROBINSON, II, ET AL. v. NELLE POWELL WILLIAMS MAHAFFEY ET AL.

**Appeal from the Chancery Court for Bedford County**
**No. 32139    J.B. Cox, Chancellor**

---

### No. M2021-01068-COA-R3-CV

---

This appeal arises from a dispute between three neighbors over the nature and permissible use of an easement created through a 1983 judgment of the chancery court. The plaintiffs own the property that is burdened by the easement and argue that the trial court correctly found that the 1983 judgment created an easement in gross in favor of the landowner directly north of their property. We find that the trial court erred in finding an easement in gross and hold that the 1983 judgment created an express easement appurtenant creating a dominant and servient tenement; however, the easement appurtenant was not capable of being conveyed to landowners who were not purchasing the dominant estate. Likewise, we find that there was no prescriptive or implied easement allowing the easement to be deeded from one neighbor to another. Because the trial court's judgment lacked findings of fact relevant to the slander of title cause of action, we remand this issue to the trial court for the entry of specific findings of fact on the elements of slander of title. We affirm the trial court's holding that defendants are responsible for the cost of re-installing a gate that they damaged. The chancery court's order is reversed in part, vacated in part, and affirmed in part.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed in Part, Vacated in Part, and Affirmed in Part

ANDY D. BENNETT, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and W. NEAL MCBRAYER, J., joined.

Donald N. Capparella and Patrick Byrne McAuley Riley, Nashville, Tennessee, for the appellants, Brent Walker,[1] Findley Mahaffey, Candace Kellogg, and Harry Kellogg.

---

[1] During the pendency of this appeal, Nelle Powell Mahaffey passed away. On December 29, 2021, Brent Walker, Personal Representative of the Estate of Nelle Powell Williams Mahaffey, was substituted as a party in this case.

John H. Richardson, Jr., Fayetteville, Tennessee, for the appellees, E. Joseph Robinson, II, and Brenda M. Robinson.

## OPINION

### FACTUAL BACKGROUND AND HISTORY

This case involves a dispute between neighbors over the use of an easement. In 1980, Nelle Powell Mahaffey acquired a 107-acre tract of farmland known as "Holt Farm" in Wartrace, Tennessee. The parcel was landlocked, but an existing lane or passageway, referred to in the record as "Historic Holt Lane," traversed the eastern border of the 107-acre tract and intersected a portion of a neighboring property to the south, connecting Holt Farm to Horse Mountain Road, a public roadway. At issue in this case is a segment of Historic Holt Lane that runs from Horse Mountain Road across property now owned by Joseph and Brenda Robinson (collectively "the Robinsons" or "Plaintiffs"). The Robinsons' predecessors in title were William H. Robertson and Jane Henderson Magill (hereinafter "Robertson-Magill") from whom the Robinsons purchased the property in 2015. The Robinsons' land is directly south of Holt Farm and directly north of and abuts Horse Mountain Road.

Of importance to this case is a prior lawsuit from the early 1980s that resolved a property dispute between Ms. Mahaffey (then known as Nelle Powell Williams) and Robertson-Magill. Robertson-Magill sued Ms. Mahaffey over Ms. Mahaffey's use of certain property to the south of Holt Farm that she believed she owned. Ms. Mahaffey was apparently engaging in logging activities on the property in question.[2] After a bench trial, the Chancery Court for Bedford County determined that Ms. Mahaffey did not own the land at issue; however, the court acknowledged that the Robertson-Magill tract was subject to an easement for the purposes of ingress and egress. Specifically, the chancery court's 1983 judgment provided, in relevant part:

> Plaintiffs, William H. Robertson and Jane Henderson Magill, are the owners in fee of said described land, *subject, however, to an easement over and across said described land for the purpose of ingress and egress to and from land owned by the defendant, Nell[e] Powell Williams*, which easement is described and limited to the following: An easement for a passageway, not exceeding twenty-two feet in width, along the same location as an existing passageway, the eastern boundary of said twenty-two ft. easement being defined as follows: Beginning at a fence corner post on the north margin of

---

[2] We infer that logging activity was involved in the dispute for several reasons, including that a defendant in the litigation was "J.E. Smith Logging Company" as well as paragraph eight from Defendants' Rebuttal of Petition for Declaratory Judgment of Easement & Petition for Injunction which states that the 1983 judgment "was a judg[]ment concerning property lines being crossed in logging."

- 2 -

the Wartrace-Horse Mountain Road, 25 feet from its center; thence north 5 deg. 29 min. east 377.2 feet to a corner post; thence along the east boundary of said land belonging to William H. Robertson and Jane Henderson Magill north 6 deg. 27 min. east 802.8 feet to a metal post; thence, again along said east boundary line north 3 deg. 00 min. east 415.3 feet to a snag in old fence, the northeast corner of land belonging to the said Robertson and Magill, where said line intersections with the boundary of Williams.

It is further ordered, adjudged, and decreed by the Court that all claims of ownership in said land described by the defendant, Nell[e] Powell Williams, be, and the same are, hereby removed, and she and the other defendants, and their respective agents, successors in interest, are hereby perpetually enjoined from trespassing upon said land, or instituting any action or making any claim to said land, or interfering with plaintiff's use and possession of said land.

(Emphasis added). This 1983 judgment was recorded in Deed Book 156, page 1 of the Register's Office for Bedford County, Tennessee. When Robertson-Magill sold their land to the Robinsons in 2015, the Robinsons' deed specifically referenced "Easements of record in Deed Book 156, page 1."

In the late 1980s, Ms. Mahaffey, along with her husband, Findley Mahaffey, purchased other farmland that was adjacent to the 107-acre tract, thereby acquiring approximately 640 contiguous acres around and including Holt Farm. Specifically, the Mahaffeys purchased approximately 65 acres north and east of Holt Farm from Nannie B. and A.M. Donnell ("the Donnells") in 1986, and in 1987, the Mahaffeys purchased approximately 467 acres east and south of Holt Farm from Mary Kate and John A. Cooper ("the Coopers").

In 2007, the Mahaffeys sold Candice and Harry Kellogg ("the Kelloggs") a 9.76-acre tract of the land the Mahaffeys acquired from the Donnells. The "Lot/Land Purchase and Sale Agreement" signed by the Kelloggs and Mahaffeys on April 9, 2007 includes a section entitled "Special Stipulations" which states: "Seller agrees to execute an easement agreement stating that the above property has use of the drive located off Horse Mountain Rd. owned by seller. Purchaser to have attorney initiate the agreement and seller will provide the signed easement agreement at closing." The 2007 deed conveying 9.76 acres from the Mahaffeys to the Kelloggs states that the conveyance was "subject to any and all existing easements and restrictions of record" and "subject to that Easement of record at Deed Book 156, page 1, Register's Office, Bedford County, Tennessee."[3]

---

[3] In their Amended Answer and Counterclaim for Declaratory Judgment, the Kelloggs explained the language in the 2007 deed regarding the easement as follows: "[R]ather than grant[ing] the non-exclusive easement as intended by the parties, the deed erroneously referenced the easement by stating[,] 'This

Initially, the Kelloggs accessed their property from the nearby Bell Buckle-Wartrace Road over land owned by the Mahaffeys. However, when the Mahaffeys sold the land which the Kelloggs had used to access Bell Buckle-Wartrace Road in 2012, the new owner made it clear that the Kelloggs could not use his property to continue to access Bell Buckle-Wartrace Road. Thus, since some point in 2012, the Kelloggs began driving south from their land, through wooded areas and pastures on the Mahaffeys' land, to reach Horse Mountain Road. The last part of the journey to reach Horse Mountain Road was via Historic Holt Lane, which forms a large portion of the eastern border of the Mahaffey's original 107-acre tract and intersects a portion of the tract owned by the Robinsons. The Mahaffeys gave the Kelloggs permission to use Historic Holt Lane. Indeed, in 2015 the Kelloggs and Mahaffeys executed a "Right to Easement Agreement" which stated:

> I Nelle P. Williams Mahaffey . . . do grant a sole perpetual easement across described land for the purpose of ingress and egress to and from [the Kellogg's 9.76 acres], which easement is described and limited to the following: an easement for a passageway not exceeding fifty feet in width, beginning in the center of the exiting lane, twenty five [feet] to the east and twenty five feet to the west along the same location as the existing passageway along the most eastern boundary of 91.00 acres parcel . . . owned by Nelle P. Williams Mahaffey . . . easement beginning at the northeast corner of the most eastern boundary of N.P. Williams . . . traveling the full length of the eastern boundary to the southeast corner of said property owned by the grantor N. P. Williams Mahaffey giving the [Kelloggs] access to and from Horse Mountain Road to grantees property, and to establish a passageway to run perpetually with said land to be recorded with property deed of parcel . . . presently owned by grantees.

Similarly, in 2016, the Mahaffeys and Kelloggs executed a document entitled "Grant of Easement" that states the Mahaffeys grant the Kelloggs:

> A permanent right-of-way easement for purposes of ingress and egress between Horse Mountain Road and the tract of land conveyed to [the Kelloggs] . . . [lengthy property description omitted]. This easement shall run with the land and shall be binding upon the parties and their heirs and assigns. [The Kelloggs] shall not build any fences along the easement without written permission of the [Mahaffeys] or their successors in title. [The Kelloggs] shall not install any gates along the easement without the written permission of the [Mahaffeys] or their successors in title. . . .

---

conveyance is subject to that Easement of record in Deed Book 156 at page 1[.]'" In another section of their Answer, the Kelloggs referred to the language of the 2007 deed as follows: "the intent of the parties was to grant Defendants Kellogg a non-exclusive easement over the Historic Holt Lane, and not to say the Kellogg Home Site was 'subject' to it. It was simply a lawyer error that went unnoticed at the time."

After the Robinsons purchased the land from Robertson-Magill in 2015, they objected to the Kelloggs' use of the portion of Historic Holt Lane that traverses their property, and they eventually put up a gate. The Robinsons believed the 1983 judgment limited use of the lane only to Ms. Mahaffey, so the Robinsons provided the Mahaffeys with the code to the newly-installed gate, but they did not provide the code to the Kelloggs.

In December 2017, the Kelloggs returned home from being out of town to find the Robinsons had locked the gate which prevented the Kelloggs from accessing their home. An employee of the Mahaffeys cut the lock on the gate, and Mr. Kellogg and Mr. Robinson got into a heated argument during which the police were called. The police advised the parties to stay away from each other. A few hours later, when the Kelloggs and their guests again attempted to use the lane, Mr. Robinson and Mr. Kellogg got into another heated verbal discussion. Police were called once more, and the parties were again advised to stay away from each other and to resolve the matter in court.

CURRENT LITIGATION AND PROCEDURAL HISTORY

On June 1, 2018, the Robinsons filed the underlying action against the Mahaffeys and the Kelloggs (collectively "Defendants") seeking a declaratory judgment that the 1983 judgment created an easement for Ms. Mahaffey to get to and from her 107-acre parcel, and for no other person. The Robinsons also sought to enjoin the Mahaffeys from allowing the Kelloggs and others to use the easement.

The Defendants answered and included as a counterclaim a petition for a declaratory judgment that the Kelloggs had a non-exclusive right of ingress-egress to Horse Mountain Road via Historic Holt Lane through the Plaintiffs' farm, a right that runs with the land. They asserted that the 1983 judgment renders the Plaintiffs' land the servient tenement, encumbered by the 22 foot-wide appurtenant right of way easement that benefits all of the Mahaffeys' farmland. They also asserted that the Kelloggs have an easement by prescription and sought a restraining order against the Robinsons that would prevent them from blocking Historic Holt Lane. On April 15, 2019, the Mahaffeys and Kelloggs executed and recorded a Correction Deed which was prepared by an attorney and stated, in pertinent part:

> WHEREAS, a Deed of Correction of record in Deed Book 347 page 608 Register of Deeds for Bedford County, Tennessee, NELLE P. WILLIAMS MAHAFFEY and husband, FINDLEY MAHAFFEY, the Grantors re-conveyed certain real estate, with an easement to Horse Mountain Road to HARRY KELLOGG and wife, CANDICE KELLOGG, the Grantees; and
>
> WHEREAS, by inadvertence and mutual mistake said deed and deed of correction contained an error in the description of the easement which should have referenced the right of way casement by prescription to Horse Mountain

Road acquired by Grantors, Grantors' prior title owners in the farm consisting of 64.84 acres more or less described in deed of record in Deed Book 168 page 579 Register of Deeds for Bedford County, Tennessee ("Donnell Farm" or "Donnell-Mahaffey Farm"[)], from which the 9.76 acres conveyed to Grantees derives; and

WHEREAS, the Grantees have requested the Grantors to correct said error, and the Grantors have agreed to do so.
. . .
This conveyance includes a non-exclusive right of way easement by prescription over the existing from lane [sic] from the above described 9.76 acres to Horse Mountain Road, the southern portion of which was declared to be a right of way easement by prescription to serve 107 acres conveyed to Grantors by deed by deed [sic] of record in Deed Book 148 page 65 Register of Deeds for Bedford County, Tennessee, by Judgment of record at Deed Book 156, page 1, Register's Office, Bedford County, Tennessee. The right of way easement by prescription serving the 9.76 acres to Horse Mountain Road has never been litigated to the present knowledge of the parties. However, the existing lane has served the 9.76 acres and other portions of the remaining land of Grantors in the Donnell-Mahaffey Farm for over 150 years.

The Robinsons filed an answer to the counterclaim, denying all allegations and also filed a separate complaint to set aside the deeds of correction and for slander of title. By agreement of the parties, the actions were consolidated. The Defendants later moved for summary judgment "as a matter of law on each separate claim asserted by Plaintiffs." The trial court denied their motion for summary judgment, and the case proceeded to trial.

The court held a two-day bench trial in May 2021, during which nine witnesses testified. Testimony from these witnesses will be discussed and summarized as applicable to the issues on appeal. The court entered a memorandum opinion on July 28, 2021, which was incorporated into a final order, in which it made findings of fact and acknowledged: "This dispute particularly involves questions of fact and law that are unusual. This is not a 'run of the mill' boundary dispute." Ultimately, the court concluded that the doctrine of res judicata applied to prevent the Defendants from relitigating ownership of the passageway, as the 1983 judgment "clearly and unequivocally set out rights that do not run with the land" but "limit[] the type and nature of the property ownership and the right to cross [the passageway] to Ms. Mahaffey and to none other . . . ." The court held that the 1983 easement provided an easement in gross to Ms. Mahaffey.

The court further held that because the Kelloggs' right to use the lane was based on the Mahaffeys' right to use it, the Kelloggs' claims must fail. The court ordered that the Mahaffeys had damaged the Plaintiffs and ordered that a gate be placed on both ends of

the lane, to be paid for by the Mahaffeys. The court also ruled that the Defendants slandered the title of the Robinsons and ordered that the easements purporting to convey the Kelloggs an easement across the Robinsons' land should be rescinded. The court awarded the Robinsons a $48,199.00 judgment against the Defendants, jointly and severally, for slandering the Robinsons' title, as evidenced by the proof of attorney's fees, and $2,962.25 for the expenses incurred to prove damages for slander of title. The court also made an adverse credibility finding with respect to the testimony of Mr. Kellogg, finding his testimony "to be less than credible."

The Defendants have appealed, raising five issues, which we restate as follows: whether the 1983 judgment granted an easement appurtenant rather than an easement in gross; whether the trial court erred in finding that res judicata barred the Defendants' claims of prescriptive easement; whether a prescriptive easement exists for the benefit of the Defendants; whether an implied easement exists; and whether the monetary remedies awarded by the trial court to the Robinsons should be reversed.

STANDARD OF REVIEW

Because the trial court decided this case without a jury, we review the decision de novo on the record and presume the trial court's factual findings are correct. TENN. R. APP. P. 13(d); *Fowler v. Wilbanks*, 48 S.W.3d 738, 740 (Tenn. Ct. App. 2000). We will not reverse the trial court's findings of fact unless they are contrary to the preponderance of the evidence. *Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000). For the evidence to preponderate against the trial court's factual finding, it must support another finding of fact with greater convincing effect. *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 70-71 (Tenn. Ct. App. 2000). If the trial court fails to make findings of fact, however, our review is de novo with no presumption of correctness. *Archer v. Archer*, 907 S.W.2d 412, 416 (Tenn. Ct. App. 1995). Likewise, we review the trial court's application of law de novo with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). In the case of mixed questions of law and fact, we review them de novo with no presumption of correctness. *State v. Thacker*, 164 S.W.3d 208, 248 (Tenn. 2005). If the trial court makes an assessment of a witness's credibility, this Court will not reevaluate that assessment absent clear and convincing evidence to the contrary. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

ANALYSIS

I.      Nature of the Easement

We must first consider the nature of the easement granted to Ms. Mahaffey by the 1983 judgment. The Robinsons argue, and the trial court found, it is an easement in gross, personal only to Ms. Mahaffey. In contrast, the Mahaffeys and Kelloggs assert the easement should be classified as appurtenant, such that it runs with the land.

"'An easement is a right an owner has to some lawful use of the real property of another.'" *Cellco P'ship v. Shelby Cty.*, 172 S.W.3d 574, 588 (Tenn. Ct. App. 2005) (quoting *Pevear v. Hunt*, 924 S.W.2d 114, 115 (Tenn. Ct. App. 1996)). The most common form of easement is a right of way across another's property. *Shew v. Bawgus*, 227 S.W.3d 569, 578 (Tenn. Ct. App. 2007) (citing *Stinson v. Bobo*, No. M2001-02704-COA-R3-CV, 2003 WL 238723, at *3 (Tenn. Ct. App. Feb. 4, 2003)). This Court has recognized that easements "may take many different forms" and can be created in the following ways: "(1) express grant, (2) reservation, (3) implication, (4) prescription, (5) estoppel, and (6) eminent domain." *Cellco P'Ship*, 172 S.W.3d at 588 (quoting *Pevear*, 924 S.W.2d at 115-16). "In the case of an express easement, there must be a document evincing the parties' intent that complies with the relevant statute of frauds, Tennessee Code Annotated § 29-2-101[.]"[4] *Holder v. Serodino*, No. M2014-00533-COA-R3-CV, 2015 WL 5458377, at *7 (Tenn. Ct. App. Sept. 16, 2015); *see also Smith v. Evans*, No. M2007-02855-COA-R3-CV, 2008 WL 3983117, at *2 (Tenn. Ct. App. Aug. 27, 2008) ("To create an easement by express grant, there must be a writing containing plain and direct language evincing the grantor's intent to create a right in the nature of an easement rather than a license."). In this case, an easement was created by the Bedford County Chancery Court through the 1983 judgment. The 1983 judgment was signed by both parties' attorneys and was subsequently recorded in Deed Book 156, page 1, Register's Office, Bedford County, Tennessee. Therefore, the easement at issue was created through an express grant. We next turn to answer the question at the center of the parties' dispute: who or what does the easement benefit?

Easements are broadly divided into two categories: easements appurtenant and easements in gross. *Newman v. Woodard*, 288 S.W.3d 862, 865 (Tenn. Ct. App. 2008) (citing *Cellco P'Ship*, 172 S.W.3d at 588). Easements appurtenant involve two tracts of land: 1) the dominant tenement (the tract that benefits from the use of the easement) and 2) the servient tenement (the tract that is burdened by the use of the easement). *Id.* (citing *Cellco P'Ship*, 172 S.W.3d at 588); *Holder*, 2015 WL 5458377, at *8. "Easements appurtenant run with the land and may be enforced by subsequent purchasers of the

---

[4] With respect to the conveyance of real property, Tennessee's Statute of Frauds, Tenn. Code Ann. § 29-2-101(a), provides:

> No action shall be brought . . . [u]pon any contract for the sale of lands, tenements, or hereditaments, or the making of any lease thereof for a longer term than one (1) year . . . unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person lawfully authorized by such party. In a contract for the sale of lands, tenements, or hereditaments, the party to be charged is the party against whom enforcement of the contract is sought.

*See Waddle v. Elrod*, 367 S.W.3d 217, 222 (Tenn. 2012) (holding that the Statute for Frauds applies to settlement agreements that transfer an interest in real property).

dominant tenement against owners of the servient tenement." *Newman*, 288 S.W.3d at 865 (citing *Cellco P'Ship*, 172 S.W.3d at 588). An easement in gross represents a personal interest or right to use the property of another. *Cellco P'ship*, 172 S.W.3d at 588. In the case of an easement in gross, "[t]he beneficiary need not, and usu[ally] does not, own any land adjoining the servient estate." *Easement in gross*, BLACK'S LAW DICTIONARY (11th ed. 2019). We have explained that easements in gross constitute a "right to use the land of another which does not benefit another property, or dominant estate, thus easements in gross usually involve only one parcel." *Pevear*, 924 S.W.2d at 116. Importantly, "in Tennessee, 'an easement is not . . . presumed to be in gross, when it can fairly be construed to be appurtenant.'" *Holder*, 2015 WL 5458377, at *8 (quoting *Goetz v. Knoxville Power & Light Co.*, 290 S.W. 409, 414 (Tenn. 1926)); *see also Pevear*, 924 S.W.2d at 116 ("An easement appurtenant to land is favored over an easement in gross in Tennessee.").

Here, the trial court found that the 1983 judgment provided Ms. Mahaffey a "right to cross" the property "and to none other." In holding that Ms. Mahaffey held an easement in gross, the court explained that the 1983 judgment created "an estate for Ms. Mahaffey's use of the passageway for her lifetime and a prohibition of any of her heirs or assigns from bringing litigation or asserting a claim to ownership in any portion of the land of the present plaintiffs." As will be discussed below, we disagree with the trial court's interpretation of the 1983 judgment.

Recounting the genesis of the lawsuit between Robertson-Magill and Ms. Mahaffey is helpful in understanding the chancery court's 1983 judgment. As previously discussed, Robertson-Magill sued Ms. Mahaffey after Ms. Mahaffey commenced logging activities on property Robertson-Magill believed was theirs. Thus, in that litigation, the court was chiefly concerned with determining who owned the property both parties claimed an interest in. In the 1983 judgment, the court held that Robertson-Magill were "the owners, and entitled to the use and possession" of the land at issue. However, the court went on to acknowledge the Robertson-Magill tract was subject to an easement:

> over and across said described land for the purpose of ingress and egress to and from land owned by the defendant, [Ms. Mahaffey], which easement is described and limited to the following: An easement for a passageway, not exceeding twenty-two feet in width, along the same location as an existing passageway.

Next, the court clarified that Ms. Mahaffey's claims of ownership in the land on which she was pursuing logging activity "are removed, and she and the other defendants[5], and their respective agents, successors in interest, are hereby perpetually enjoined from trespassing upon said land . . . ." Thus, the 1983 judgment determined, in pertinent part, that: 1) Roberston-Magill owned the land Ms. Mahaffey was attempting to log; and 2) a portion of

---

[5] Other defendants were John Oliver and Gene Smith, doing business as J. E. Smith Logging Company.

Robertson-Magill's land was subject to a twenty-two foot easement located on an existing passageway or lane.

The Robinsons and the trial court construe the language enjoining Ms. Mahaffey's "respective agents" and "successors in interest" from "trespassing" as evidence of the court's intent to create an easement in gross in favor of Ms. Mahaffey. In our view, the language enjoining Ms. Mahaffey's agents and successors from trespassing applies to the land that Ms. Mahaffey erroneously believed she owned, and not to the easement connecting Holt Farm to Horse Mountain Road. The easement was not restricted to Ms. Mahaffey personally, instead, it was restricted to "land owned by [Ms. Mahaffey]." Moreover, the land owned by Ms. Mahaffey was adjacent to the Robertson-Magill land, creating a dominant estate (Holt Farm) and a servient estate (the Robertson-Magill parcel). The fact that the properties are connected weighs in favor of finding the easement was appurtenant, *See Stange v. Roberts*, No. M2019-01060-COA-R3-CV, 2020 WL 1808615, at *4 (Tenn. Ct. App. Apr. 9, 2020) (reasoning that "the fact that the holders of the easement own land adjoining the servient estate provides strong support for the conclusion that the easement is an easement appurtenant rather than an easement in gross"). The easement clearly served and benefitted Holt Farm which was landlocked at the time. *Lynn v. Turpin*, 215 S.W.2d 794, 796 (Tenn. 1949) (considering whether the easement "add[s] to the proper use and enjoyment of [the] dominant tenement" in holding that the easement was appurtenant). Significantly, Tennessee courts have long recognized a strong preference for easements appurtenant over easements in gross. *Lynn*, 215 S.W.2d at 796; *Goetz*, 290 S.W. at 414 (noting that "the rule that an easement is not to be presumed to be in gross, when it can fairly be construed to be appurtenant, seems to be well established"); *Lewallen v. York*, No. E2004-02042-COA-R3-CV, 2005 WL 1528271, at *3 (Tenn. Ct. App. June 29, 2005); *Moore v. DeVault*, No. M2001-02225-COA-R3-CV, 2002 WL 31769110, at *2 (Tenn. Ct. App. Dec. 11, 2002) ("It is well settled that where there is any question whether an express easement is appurtenant or in gross, construction of the granting clause as an easement appurtenant is always favored."). In light of these principles, we find that the 1983 judgment "can fairly be construed as" granting an easement appurtenant; thus, we reverse the trial court's holding that the 1983 judgment created an easement in gross. As an easement appurtenant, the easement ran with Ms. Mahaffey's 107-acre tract of land known as Holt Farm.

II.     Transferability of the Easement to the Kelloggs

The next question for our consideration is more complex—was it permissible for the Mahaffeys to deed a "permanent right-of-way easement" to the Kelloggs giving them access to Horse Mountain Road, when the land the Mahaffeys sold to the Kelloggs did not derive from Holt Farm, the original dominant tenement? The trial court did not take up this issue, reasoning that "[s]ince the Court has held that Ms. Mahaffey's rights do not run with the land, the Kelloggs' claims must also fail." In support of their argument that the Mahaffeys were authorized to deed the easement to the Kelloggs, the Defendants assert

that the Kelloggs use of the easement does not constitute an increase in the burden on the servient estate, and therefore, the Kelloggs should be permitted to use the easement.

We have previously considered some of the legal principles that bear on this issue in the case of *Rawdon v. Johnston*, No. M2010-01097-COA-R3-CV, 2010 WL 4867451, at *2-3 (Tenn. Ct. App. Nov. 23, 2010), *perm. app. denied.* In *Rawdon*, the owner of a water easement sought to use water from the appurtenant easement on adjacent land that was not part of the original dominant estate. *Rawdon*, 2010 WL 4867451, at *1. This Court found that the use of the water would not increase the burden on the original easement, because the water usage was limited to the existing pipe; thus, the Court held that the easement owner could use the water on his adjacent tracts that were not part of the original dominant tenement. *Id.* at *2-3. The *Rawdon* court considered the evolution of caselaw on this topic and reasoned as follows:

> The owner of an easement may not materially increase the burden on the servient estate. *Miller v. Street*, 663 S.W.2d 797, 798 (Tenn. Ct. App. 1983). . . . [The servient tenement owner] relies upon *McCammon v. Meredith*, 830 S.W.2d 577, 580 (Tenn. Ct. App. 1991), which states: "Enlarging an easement to include adjoining tracts does increase the burden." *MaCammon*, in turn, relies upon *Adams v. Winnett*, 156 S.W.2d 353 (Tenn. Ct. App. 1941), which states:
>
> > A fundamental principle is that an easement for the benefit of a particular piece of land cannot be enlarged and extended to other parcels of land, whether adjoining or distinct tracts, to which the right is not attached. In other words, an easement appurtenant to a dominant tenement can be used only for the purposes of that tenement; it is not a personal right, and cannot be used, even by the dominant owner, for any purpose unconnected with the enjoyment of his estate. The purpose of this rule is to prevent an increase of the burden upon the servient estate, and it applies whether the easement is created by grant, reservation, prescription, or implication.
>
> *Id.* at 357.
>
> The reason for the rule preventing an easement for the benefit of a particular piece of land from being extended to other tracts of land "is to prevent an increase of the burden upon the servient estate." *Id.* Where the reason does not exist, the rule does not apply. *Ogle v. Trotter*, 495 S.W.2d 558, 566 (Tenn. Ct. App. 1973). Thus, this court has held that, where the burden on the easement is materially decreased or remains no greater than was originally imposed, no injunction will lie to prohibit use of the easement for

- 11 -

an adjoining property. *Id.* Similarly, "where the additional burden is relatively trifling, the user will not be enjoined." *O'Leary v. Hall*, No. 03A01-9507-CH-00235, 1996 WL 84852, at *4 (Tenn. Ct. App. Feb. 27, 1996) (quoting *Ogle*, 495 S.W.2d at 566 (quoting 28 C.J.S. *Easements* § 92 (1941))); *see also Carbone v. Vigliotti*, 610 A.2d 565, 569 (Conn. 1992) ("When no significant change has occurred in the use of the easement from that contemplated when it was created, as in this case, the mere addition of other land to the dominant estate does not constitute an overburden or misuse of the easement."); *Brown v. Voss*, 715 P.2d 514, 518 (Wash. 1986) (where there was no evidence of any increase in burden on the servient estate, the trial court did not abuse its discretion in denying a request to enjoin the owner of the dominant estate from using the easement to benefit a contiguous nondominant estate owned by the same owner) . . . .

*Rawdon*, 2010 WL 4867451, at *2-3. From *Rawdon* we learn that the general rule prohibiting an appurtenant easement from being extended to later-acquired land does not apply when there is no evidence of an increase in the burden on the servient estate.[6] *See also Ogle*, 495 S.W.2d at 566. This holding does not answer the question confronting us, however. Here, we must determine whether the owners of a dominant estate (the Mahaffeys) may extend their interest in an appurtenant easement to purchasers of an adjacent nondominant estate (the Kelloggs).

The Defendants assert that the holding in *Schmutzer v. Smith*, 679 S.W.2d 453 (Tenn. Ct. App. 1984) answers the question. The *Schmutzer* case arose from an appurtenant easement owner's effort to improve his easement by constructing a roadway on the easement, and the case stands for the proposition that the owner of "a right-of-way may take the necessary steps in preparing an easement for proper use, including grading, graveling or paving." *Schmutzer v. Smith*, 679 S.W.2d 453, 455 (Tenn. Ct. App. 1984).

---

[6] We note that the RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 4.11 (2022) entitled "Use of Appurtenant Easement . . . to Serve Property Other Than Dominant Estate" expresses the following general rule: "[A]n appurtenant easement or profit may not be used for the benefit of property other than the dominant estate." This general rule is further explained in comment b as follows:

> *b. Appurtenant easement cannot be used to serve nondominant estate.* Under the rule stated in this section, unless otherwise provided[,] an appurtenant easement cannot be used to serve property other than the dominant estate. The rationale is that use to serve other property is not within the intended purpose of the servitude. This rule reflects the likely intent of the parties by setting an outer limit on the potential increase in use of an easement brought about by normal development of the dominant estate, permitted under the rules stated in § 4.10. Where it applies, the rule avoids otherwise difficult litigation over the question whether increased use unreasonably increases the burden on the servient estate.

This Court tempered the general rule by engaging in the sometimes-difficult question of ascertaining whether the increased use of the easement unreasonably increases the burden on the servient estate. *See Rawdon*, 2010 WL 4867451, at *2-3.

The *Schmutzer* court also noted that the dominant landowner's use of the easement to access a later-acquired, adjoining parcel did "not increase the burden on [the servient estate]." *Id.* However, like the *Rawdon* case, the *Schmutzer* case involved the owner of the dominant estate using the easement for the benefit of a contiguous, non-dominant parcel that he also owned. The *Schmutzer* case does not answer the question of whether the owner of the dominant estate could then transfer the non-dominant parcel and the easement to a third-party. Therefore, the *Schmutzer* case does not settle the issue before us.

Defendants also assert that the case of *Cellco Partnership v. Shelby County*, 172 S.W.3d 574 (Tenn. Ct. App. 2005) supports their position that the Mahaffeys can deed their interest in the easement to the Kelloggs. However, like the *Schmutzer* case, the *Cellco* case is inapposite. In *Cellco*, the owner of an easement sought to lease their interest in the right of way to a third party to install and service a cellular communications antenna on a water tower. *Cellco P'Ship*, 172 S.W.3d at 584-85. This Court held that the lease of the easement was permissible because:

> While a private way may not be used by the public generally or by any one having no better right than the general public, the owner of such a way is not limited to its use by himself, but it may be used by his family, by pets, *by tenants occupying the land with his authority,* by his servants, agents, or employees in conducting his business, by persons transacting business with him, or by guests for social purposes, except in cases where the right of way is created by express agreement *and the user is restricted by the terms of the agreement.*

*Cellco P'Ship*, 172 S.W.3d at 597 (quoting 28A C.J.S. *Easements* § 164 (1996)). The facts before us are distinct from *Cellco P'Ship*, because the Mahaffeys are not assigning or leasing their right to the Kelloggs, but rather, the Mahaffeys have attempted to deed the easement appurtenant to the Kelloggs.

The parties have not provided a Tennessee case directly analogous to the present scenario, and we have not found one. For assistance in resolving the issue, we turn to secondary sources and caselaw from other courts. Comment a to the RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 5.6 entitled "Severability of Appurtenant Benefits" states:

> As a general rule, appurtenant benefits are not intended to be severable and transferable separate from a transfer of the benefited property. Limiting use of an appurtenant easement or profit to holders of the dominant estate (see § 4.11) limits the potential burden on the servient estate. It also imposes a limit on the numbers of people whose consent would be required for an effective modification or termination of an easement, profit, or covenant. Permitting severance and separate transfer of the benefit would generally

permit conversion of an appurtenant benefit into a benefit in gross, imposing a greater burden on the property. Accordingly, the basic rule stated in this section is that appurtenant benefits may not be severed and transferred separately from all or part of the benefited property. The rule reflects a presumption as to the likely intent of the parties who created the servitude rather than a public policy against conversion of appurtenant benefits into benefits in gross.

The Connecticut Supreme Court has relied on the RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 5.6 and opined as follows:

[W]e were willing to allow the extended use of the easement appurtenant to the dominant estate under circumstances where there had been a so-called expansion of the dominant estate, by virtue of the subsequent acquisition of a nondominant estate by the owner of the dominant estate, and where the extended use of the easement to the benefit of the nondominant estate would not result in a material increase in the use of the servient estate, in other words, an additional burden to the servient estate. *We conclude, however, that the expanded use of an easement appurtenant by the dominant estate to benefit a nondominant estate, not owned by the dominant estate owner, constitutes, as a matter of law, an impermissible overburdening of the servient estate.* The owner of the dominant estate, holder of the benefit of the easement appurtenant to its estate, may not, as a matter of law, transfer its rights under the easement in the absence of a conveyance of the fee in the dominant estate.

*Il Giardino, LLC v. Belle Haven Land Co.*, 757 A.2d 1103, 1113 (Conn. 2000) (emphasis added); *see also Weeks v. Wolf Creek Indus., Inc.*, 941 So. 2d 263, 272 (Ala. 2006) ("[T]he use of the easement by owners of property other than a subdivision of the dominant tenement—even property acquired by the dominant-tenement owner after creation of the servitude—overburdens the servient estate as a matter of law."). Similarly, C.J.S. Easements § 129 entitled "Easement appurtenant; no severance from dominant estate" provides:

Appurtenant easements can exist only in connection with their dominant estates and cannot be conveyed or owned separate from the land to which they are appurtenant. Thus, an easement appurtenant to land cannot be severed from the land to which it is appurtenant and made the subject of a separate grant, but can be conveyed only by a conveyance of such land. Such an easement cannot be converted into an easement in gross. . . .

(footnotes omitted). Finally, we note that the Supreme Court of New Hampshire cautions that, "the determination of whether an easement may be applied to a non-dominant estate

'requires inquiry into the intent of the parties when the easement was created.'" *Ettinger v. Pomeroy Ltd. P'ship*, 97 A.3d 1133, 1138 (N.H. 2014) (quoting *Abington Ltd. P'ship v. Heublein*, 778 A.2d 885, 892 (Conn. 2001)). When considering intent, New Hampshire courts have found that some deeds "intend[ ] to benefit an after-acquired, non-dominant estate." *Id.*

Applying these principles to the case at hand, we find that it was impermissible for the Mahaffeys to deed the easement appurtenant to Holt Farm to the Kelloggs. The Kelloggs' acreage was not part of the original dominant estate, and therefore, the Mahaffeys attempt to deed the easement to the Kelloggs constitutes an impermissible overburdening of the servient estate as a matter of law. *See Il Giardino, LLC*, 757 A.2d at 1113; *Weeks*, 941 So. 2d at 272. Moreover, we have reviewed the plain language of the 1983 judgment and find that it did not include a specific intent to benefit an after-acquired, non-dominant estate. As such, the deeds from the Mahaffeys to the Kelloggs purporting to convey an interest in the easement over the Robinsons' land are invalid.

## III. Prescriptive Easement

As an alternative argument, the Kelloggs[7] contend that the trial court erred in finding that the doctrine of res judicata bars them from asserting a claim for a prescriptive easement, and they assert that they possess a prescriptive easement for the use of Historic Holt Lane. The trial court did not rule on the underlying merits of the claim of prescriptive easement; rather, it determined that the doctrine of res judicata prevents such a claim because:

> The same party, Ms. Mahaffey, was in front of the same court, the Chancery Court of Bedford County, Tennessee, litigating a claim to

---

[7] Because we have determined that the Mahaffeys hold an express easement appurtenant, we need not consider whether they hold a prescriptive easement. Although neither party mentions the colloquy below in their briefing, we also make note of the following stipulation:

Q. Okay. I'm not trying to trip you up, but you do agree that your track comes off of not what was in 1983 owned by Ms. Nelle Williams then?
A. She didn't own that property then.
Q. Yes. And so if you assume -- and I'm asking you -- that the grant of the easement relative to the Robinson property for the lane was at least accomplished by the order of the Court in 1983, you can't have a prescriptive easement to that part, can you?
A. Really, the only thing I can say –
MR. REED: I didn't hear you, Your Honor.
BY THE COURT: Q. You can't have a prescriptive easement to that part of it, can you?
MR. REED: We stipulate that, Your Honor.
THE COURT: Thank you for the stipulation, because, I mean, that's part of the analysis issue that the Court is facing.
MR. REED: No. We stipulate that.

ownership of not only the underlying tract, but also to a passageway that the Court very effectively dealt with in its judgment. Ms. Mahaffey was in court against the predecessors in title to the present Plaintiffs. The same parties and their privies were arguing over ownership of the land.

If there were ever a time to assert ownership of vested prescriptive property rights, the time would have been in that litigation. Maps and grave markers and ancient deeds and topographical maps could have been presented to the Court back then. Asserting them now not only violates the doctrine of Res Judicata but also the letter and spirit of the prior final judgment of the Court from 1983.

The doctrine of res judicata "bars a second suit between the same parties or their privies on the same cause of action with respect to all issues which were or could have been litigated in the former suit." *Creech v. Addington*, 281 S.W.3d 363, 376 (Tenn. 2009). Res judicata is a "'rule of rest,'" that "promotes finality in litigation, prevents inconsistent or contradictory judgments, conserves judicial resources, and protects litigants from the cost and vexation of multiple lawsuits." *Jackson v. Smith*, 387 S.W.3d 486, 491 (Tenn. 2012) (quoting *Moulton v. Ford Motor Co.*, 533 S.W.2d 295, 296 (Tenn. 1976) (other citations omitted)). The party asserting a defense predicated on res judicata must demonstrate: "(1) that the underlying judgment was rendered by a court of competent jurisdiction, (2) that the same parties or their privies were involved in both suits, (3) that the same claim or cause of action was asserted in both suits, and (4) that the underlying judgment was final and on the merits." *Id.* (citing *Lien v. Couch*, 993 S.W.2d 53, 56 (Tenn. Ct. App. 1998)).

An understanding of the legal requirements to pursue a claim for a prescriptive easement is necessary to proceed with our analysis, because we must consider whether the Kelloggs' right to a prescriptive easement "could have been litigated in the former suit." *Creech*, 281 S.W.3d at 376. Our Supreme Court has set forth the definition of prescriptive easement as follows:

A doctrine related to adverse possession[8] is that of prescriptive easement . . . . Generally, this easement arises when a use, as distinguished from

---

8 Our Supreme Court has explained adverse possession as follows:

In our state, common law adverse possession rests upon the proposition "that, where one has remained in uninterrupted and continuous possession of land for 20 years, a grant or deed will be presumed." *Ferguson v. Prince*, 136 Tenn. 543, 190 S.W. 548, 552 (Tenn. 1916); *see also Webb v. Harris*, 44 Tenn.App. 492, 315 S.W.2d 274, 277 (Tenn. Ct. App. 1958). . . . In order to establish adverse possession under this theory, or in any statutorily based claim, the possession must have been exclusive, actual, adverse, continuous, open, and notorious for the requisite period of time. *Hightower v. Pendergrass*, 662 S.W.2d 932, 935 n.2 (Tenn. 1983); *cf. Menefee v. Davidson County*, 260 S.W.2d 283, 285 (Tenn. 1953).

possession, is adverse rather than permissive, open and notorious, continuous and without interruption, and for the requisite period of prescription. Boyer, *Survey of the Law of Property* 569-70. The extent of the rights matured by prescription is based upon the extent of the use during the period of prescription. *Id.*

Most authorities describe the doctrine of adverse possession and that of prescriptive easement as "blended" but with differing histories; the primary distinction is that the adverse possessor *occupied* the land of another, whereas, in prescription, there is merely adverse *use* of the land of another. *See* William B. Stoebuck, *The Fiction of Presumed Grant,* 15 KAN. L. REV. 17 (1966); Roger A. Cunningham, William B. Stoebuck, & Dale A. Whitman, *The Law of Property* § 8.7, at 451 (1984). A prescriptive easement is not ownership and the right acquired is limited to the specific use. *Bradley v. McLeod*, 984 S.W.2d 929, 934 (Tenn. Ct. App. 1998).

In order to establish prescriptive easement under the common law of this state, the usage must be adverse, under claim of right, continuous, uninterrupted, open, visible, exclusive, and with the knowledge and acquiescence of the owner of the servient tenement, and must continue for the full prescriptive period. *Id.* at 935; *see Pevear v. Hunt*, 924 S.W.2d 114, 116 (Tenn. Ct. App. 1996); *House v. Close*, 48 Tenn. App. 341, 346 S.W.2d 445, 447 (Tenn. Ct. App. 1961). The requisite period of time of continuous use and enjoyment for a prescriptive easement is twenty years. *Bradley*, 984 S.W.2d at 935; *Pevear*, 924 S.W.2d at 116; *Town of Benton v. Peoples Bank of Polk County*, 904 S.W.2d 598, 602 (Tenn. Ct. App. 1995).

*Cumulus Broad., Inc. v. Shim*, 226 S.W.3d 366, 378-79 (Tenn. 2007).

As an initial matter, we conclude that the trial court erred in determining that res judicata barred the Defendants from asserting a claim for prescriptive easement. The Kelloggs were not a party to the prior proceeding in 1983. Moreover, the prescriptive period is twenty years in length, and more than twenty years have now elapsed between the 1983 judgment and the current litigation. Therefore, new prescriptive rights may have arisen since the Robertson-Magill and Mahaffey litigation in the early 1980s. Thus, we proceed to determine whether the Kelloggs are entitled to a prescriptive easement.

The undisputed facts are not supportive of the Kelloggs' claim of an easement by prescription. The Kelloggs did not purchase the tract at issue until 2007. The prescriptive

---

*Cumulus Broad., Inc.*, 226 S.W.3d at 376-77.

period for a prescriptive easement is twenty years, and twenty years have not lapsed since the Kelloggs acquired the land. Thus, the requirement that the Kelloggs' usage of the easement be "adverse, under claim of right, continuous, uninterrupted, open, visible, exclusive, and with the knowledge and acquiescence of the owner of the servient tenement" does not meet the prescriptive period of twenty years. *Bradley*, 984 S.W.2d at 934. The Kelloggs urge us to find that the Mahaffeys also have a prescriptive easement, and thus we should "tack" on the Mahaffeys' alleged adverse use to enlarge the prescriptive period for the benefit of the Kelloggs. As previously held (and as the Defendants urged us to find), the Mahaffeys enjoy an express easement appurtenant; thus, their usage of the easement was not "adverse" and does not qualify as a prescriptive easement. *See, e.g.*, *Ryan v. Ray*, 270 So. 3d 230, 236 (Miss. Ct. App. 2018) (quoting *King v. Gale*, 166 So.3d 589, 594 (Miss. Ct. App. 2015) ("An express easement and a prescriptive easement cannot co-exist. 'The rule is well settled that use by express or implied permission or license, no matter how long continued, cannot ripen into an easement by prescription.'"). The Mahaffeys' easement is not capable of being tacked onto the Kelloggs usage to create the cumulative twenty-year prescriptive period. As such, the Kelloggs claim of prescriptive easement must fail.

IV.     Implied Easement

Defendants assert that an implied easement exists over the Robinsons' land for the benefit of the Mahaffeys and Kelloggs. We note that the trial court made no findings regarding an implied easement.

This Court has previously explained that, "[a]n easement by implication is an exception 'to the general rule that easements must be created by either an express writing or by prescription.'" *Holder*, 2015 WL 5458377, at *10 (quoting *Barrett v. Hill*, No. 01A01-9806-CV-00295, 1999 WL 802642, at *2 (Tenn. Ct. App. Oct. 7, 1999)). In addition, easements by implication are disfavored in the law. *Id.* (citing *Cellco P'ship,* 172 S.W.3d at 589). In order to find the existence of an easement by implication, the following elements must be present:

> (1) A separation of the title; (2) Necessity that, before the separation takes place, the use which gives rise to the easement shall have been long established and obvious or manifest as to show that it was meant to be permanent; and (3) Necessity that the easement be essential to the beneficial enjoyment of the land granted or retained. Another essential is sometimes added to these—namely, that the servitude be continuous, as distinguished from temporary or occasional.

*Cellco P'ship*, 172 S.W.3d at 589.

- 18 -

Because we have concluded that the 1983 judgment provided an express easement appurtenant, we decline to consider whether the facts also give rise to an easement by implication. *See Holder*, 2015 WL 5458377, at *10; *Cellco P'ship*, 172 S.W.3d at 589 (concluding that the parties' rights to an easement should be determined by referencing the granting document and the use of easements by implication should be restricted). Here again, we find no legal basis for the Mahaffeys to have deeded an easement over the Robinsons land to the Kelloggs.

## V. Slander of Title and Other Relief Awarded

We next consider whether any modifications to the court's final order are necessary in light of our holding that the 1983 judgment created an easement appurtenant rather than an easement in gross. In its final order, the trial court held that easements executed by the Mahaffeys in favor of the Kelloggs purporting to grant the Kelloggs an easement over the Robinsons' land slandered the Robinsons' title. As a result, the court awarded a judgment in favor of Plaintiffs in the amount of $48,199.00 for Plaintiffs' attorney's fees and $2,962.25 for the surveyor's fees. The court also required the Mahaffeys to pay for the cost of constructing two gates across the entrance and exit of the easement.

This Court has characterized "slander of title" as an "'unusual'" cause of action that applies when a person asserts title "in bad faith and without probable cause to the injury of another." *Waterhouse v. McPheeters*, 145 S.W.2d 766, 767 (Tenn. 1940) (quoting *Smith v. Gernt*, 2 Tenn. Civ. App. (Higgins) 65, 80 (Tenn. 1911)). Slander of title "refers to the publication of false and malicious statements disparaging another's interest in real or personal property that the person making the statements should recognize as likely to result in pecuniary harm through the conduct of third persons with respect to the other's interest in the property." *Harmon v. Shell*, No. 01-A-01-9211CH00451, 1994 WL 148663, at *4 (Tenn. Ct. App. Apr. 27, 1994). To succeed on a slander of title claim, a plaintiff must prove the following four elements:

> (1) that it has an interest in the property, (2) that the defendant published false statements about the title to the property, (3) that the defendant was acting maliciously, and (4) that the false statements proximately caused the plaintiff a pecuniary loss.

*Brooks v. Lambert*, 15 S.W.3d 482, 484 (Tenn. Ct. App. 1999) (quoting *Harmon*, 1994 WL148663, at *4). Malice is an essential element of a slander of title claim. *Waterhouse*, 145 S.W.2d at 767. Conduct is malicious not only when it is "motivated by personal hatred but also when it results from a reckless disregard of the property owner's rights. . . . Thus, statements made with reckless disregard of whether or not they are false are malicious for the purpose of a slander of title case." *Id.* (citations omitted). However, a "good faith claim of title, although erroneous, will not constitute a basis for an action of libel of title." *Ezell v. Graves*, 807 S.W.2d 700, 704

(Tenn. Ct. App. 1990). Importantly, "the question of whether the defendants acted in good faith is a question of fact to be resolved by the fact finder from the evidence adduced at trial." *Phillips v. Woods*, No. E2007-00697-COA-R3-CV, 2008 WL 836161, at \*9 (Tenn. Ct. App. Mar. 31, 2008).

With respect to its holding regarding slander or title, the trial court stated:

the Court finds that the easements that were executed by the Mahaffeys in favor of Kellogg that acknowledge prescriptive rights to this passageway are a cloud upon the title of the Plaintiffs and have slandered the Plaintiffs['] title to their land. The cloud must be removed and the slander remedied, including a reasonable attorney fee for the Plaintiffs having to bring this action.

The trial court did not make factual findings regarding the four elements of slander of title. In particular, there was no express finding that the Mahaffeys and Kelloggs acted with malice. In non-jury cases like this one, Tennessee Rule of Civil Procedure 52.01 requires that a trial court "shall find the facts specially and state separately its conclusions of law and direct the entry of the appropriate judgment." TENN. R. CIV. P. 52.01. The requirement to make findings of fact and conclusions of law on each cause of action is "not a mere technicality" but rather, serves the important purpose of "facilitat[ing] appellate review." *In re K.H.*, No. W2008-01144-COA-R3-PT, 2009 WL 1362314, at \*8 (Tenn. Ct. App. May 15, 2009). Here, the court said that Mr. Kellogg's testimony was "less than credible" and that "Mr. Kellogg is willing to say whatever is necessary to accomplish the goals of the Mahaffeys in this litigation, thereby accomplishing his own goals." This adverse credibility finding further impacts our ability to review and fairly weigh the testimony and determine the controlling facts. "Generally, the appropriate remedy when a trial court fails to make appropriate findings of fact and conclusions of law is to 'vacate the trial court's judgment and remand the cause to the trial court for written findings of fact and conclusions of law.'" *Artry v. Artry*, No. W2020-00224-COA-R3-CV, 2022 WL 4372775, at \*4 (Tenn. Ct. App. Sept. 22, 2022) (quoting *Lake v. Haynes*, No. W2010-00294-COA-R3-CV, 2011 WL 2361563, at \*1 (Tenn. Ct. App. June 9, 2011)). As such, we vacate the portion of the trial court's judgment awarding damages for slander of title and remand the issue to the trial court for findings on each of the elements of slander of title.

Finally, we consider whether the trial court erred in requiring the Mahaffeys to bear the expense of installing a gate on the Robinsons' land. The trial court found that "Mr. Mahaffey's actions in removing the gate by force were inappropriate and did damage the plaintiffs." Defendants do not point this Court to any countervailing proof to dispute the finding that the Mahaffeys were responsible for the damaged gate. Therefore, we affirm the trial court's order requiring the Mahaffeys to reimburse the Robinsons for installing gates on the property.

CONCLUSION

The judgment of the trial court is reversed in part, vacated in part, and affirmed in part. Costs of this appeal are assessed against the parties equally for which execution may issue if necessary.

_/s/ *Andy D. Bennett*_____
ANDY D. BENNETT, JUDGE