**Charles L. MOULTON et ux., Pauline M. Moulton, Appellants,**

v.

**FORD MOTOR COMPANY and Hull Dobbs, Appellees.**

Supreme Court of Tennessee.

Feb. 2, 1976.

Art Roberts, Jr., Paul T. Gillenwater, Sumter D. Ferguson, Jr., Knoxville, for appellants.

Louis C. Woolf, McCampbell, Young, Bartlett, Woolf & Hollow, Hugh W. Morgan, Kramer, Johnson, Rayson, Greenwood & McVeigh, Knoxville, for appellees.

OPINION

HENRY, Justice.

This civil action seeks to re-litigate the celebrated case of *Moulton v. Ford Motor Company,* 511 S.W.2d 690 (Tenn.1974).

I.

On 5 July, 1970, appellants were injured and damaged while driving a Ford automobile. They instituted suit on 13 May 1971, alleging that the proximate cause was a defective steering mechanism. The automobile was purchased on 30 April 1969. This Court, as then constituted, over the

dissent of the present Chief Justice, and relying, in part, on *Jackson v. General Motors Corp.,* 223 Tenn. 12, 441 S.W.2d 482 (1969) held that the cause of action was barred by the one-year statute of limitations as contained in § 28–304 T.C.A.

The instant suit presents precisely the same cause of action. Defendants moved to dismiss upon the basis of *res judicata.* The trial judge sustained the motion and dismissed the action.

We affirm.

## II.

Appellants' approach is ingenious. They assert that since the decision in their first suit Tennessee decisional law has undergone a substantial change and, in effect, they urge that they should be the beneficiaries of these changes.

First, we are cited to *Teeters v. Currey,* 518 S.W.2d 512 (Tenn.1974), wherein this Court held in a medical malpractice action, that the cause of action accrues and the statute of limitations commences to run when the patient discovers, or in the exercise of reasonable care and diligence for his own health and welfare, should have discovered the resulting injury.

Next we are cited to *McCroskey v. Bryant Air Conditioning Company,* 524 S.W.2d 487 (Tenn.1975), wherein we expressly overruled *Jackson v. General Motors, supra.*

Appellants' counsel argues with commendable zeal that the instant suit represents their first opportunity to seek redress for their injuries in the courts of the state.

■ The policy rationale in support of *res judicata* is not based upon any presumption that the final judgment was right or just. Rather, it is justifiable on the broad grounds of public policy which requires an eventual end to litigation. Akin to statutes

of limitations, the doctrine of *res judicata* is a "rule of rest" and "private peace". See 2 *Freeman on Judgments,* § 626, 1320 (5th ed. 1925).

The words of Justice Caruthers in *Warwick v. Underwood,* 40 Tenn. 238, decided over a century ago, have continuing relevance:

. . . It is not material on this point whether the finding of the jury was *right or not* in the former suit. That cannot be questioned any more between the same parties or their privies. *Right or wrong* the question was finally closed, unless a new trial had been obtained in the same suit. This rule is not alone for the benefit of the parties litigant, to put an end to strife and contention between them, and produce certainty as to individual rights, but it is also intended to give dignity and respect to judicial proceedings, and relieve society from the expense and annoyance of indeterminable litigation about the same matter. 40 Tenn. at 241

■ This action presents an unfortunate conflict between the competing principles of justice and finality in the law. It is essential to our system of justice that we recognize a proper balance between stability and change. Strong considerations of public policy demand that our jurisprudence be adapted to contemporary conditions and that it expand to better serve evolving standards of fundamental fairness and due process. These dictates of justice and morality prompted our action in *Teeters* and *McCroskey.* Strong considerations of public policy demand that they not be applied in such a manner as to revive cases wherein contrary results were reached.[1] Such an application would have devastating results on the stability of judgments and would operate to preclude any responsible court from taking a forward step in the law.

---

1. If we were to permit this suit to be reopened, considerations of fairness would demand permission to re-litigate *Jackson v. General Motors.* Moreover, the gate would be ajar for entry by those whose suits were never initiated because of *Jackson* and *Moulton.*

We hold that the decision in *Moulton v. Ford Motor Co., supra,* fully, finally and irrevocably decided the controversy between these parties and, therefore, is *res judicata.* Subsequent decisions by this Court are of no significance in the context of the instant suit.

The judgment of the trial judge is Affirmed.

FONES, C. J., BROCK and HARBISON, JJ., and HYDER, Special Justice.