# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### April 22, 2025 Session

## IN RE CONSERVATORSHIP OF SUSAN DAVIS MALONE

**Appeal from the Probate Court for Shelby County**
**No. PR-24906     Joe Townsend, Judge**

_____

### No. W2024-00264-COA-R3-CV
_____

This is a conservatorship action. Appellants are attorneys who prepared estate planning documents for Susan Davis Malone in 2014 and 2018. Ms. Malone's 2018 documents included a durable power of attorney and power of attorney for healthcare ("DPOAs") in favor of Appellants. In that 2018 healthcare DPOA, Ms. Malone appointed Appellants to serve as her conservator should the need arise. In 2021, Ms. Malone suffered a disabling healthcare event, and Appellants provided for her care pursuant to the 2018 documents. In 2022, Ms. Malone purportedly revoked the 2018 DPOAs and executed DPOAs in favor of her daughter, Appellee Lisa Malone Jackson. Appellants filed a petition to be appointed conservator; Ms. Jackson filed a counter-petition. The proceedings in the trial court initially focused on whether Ms. Malone had the capacity to revoke the 2018 DPOAs and to execute the 2022 DPOAs. During the proceedings, Appellants filed two motions to recuse the trial judge. The trial court denied both motions. On appeal, this Court affirmed. While Appellants' second motion to recuse was pending, the trial court found good cause to hold an evidentiary hearing on the merits of the competing conservatorship petitions. Attorneys did not participate in the hearing, and the trial court appointed a neutral interim conservator. Shortly after it denied Appellants' second motion to recuse, the trial court determined that an additional hearing was not necessary. The trial court found that the 2022 documents were valid and concluded without an evidentiary hearing that it was in Ms. Malone's best interest to appoint Appellees to serve as co-conservators. Upon review of the record, we determine that the evidence is insufficient to support the trial court's judgment. We vacate the judgment and remand the case for further proceedings. Additionally, we reverse the trial court's dismissal of the guardian ad litem.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Vacated in part, Reversed in part and Remanded**

VALERIE L. SMITH, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and CARMA DENNIS MCGEE, J., joined.

Edward Thomas Autry, Memphis, Tennessee, for the appellants, Edward Thomas Autry, and Hannah Elizabeth Bleavins.

David Wade, Christopher M. Myatt, and Bryant T. Carlton, Memphis, Tennessee, for the appellees, Paul Neil Royal, Lisa Malone Jackson, and Janelle Rachal Eskridge.


**OPINION**

**I. BACKGROUND AND PROCEDURAL HISTORY**

This conservatorship case has had a protracted history in the trial court and in this Court. Appellants filed two motions to recuse the trial judge, and most of the procedural history has been detailed in four opinions following Appellants' accelerated interlocutory appeals as of right pursuant to Rule 10B of the Tennessee Supreme Court Rules ("Rule 10B"). *See In re Conservatorship of Malone*, No. W2023-00841-COA-T10B-CV, 2023 WL 8454618 (Tenn. Ct. App. Dec. 6, 2023) ("*Malone I*"); *In re Conservatorship of Malone*, No. W2024-00134-COA-T10B-CV, 2024 WL 964147 (Tenn. Ct. App. Mar. 6, 2024) ("*Malone II*"), *overruled by*, *In re Conservatorship of Malone*, 691 S.W.3d 365 (Tenn. 2024)) ("*Malone III*"); *In re Conservatorship of Malone*, No. W2024-00134-COA-T10B-CV, 2024 WL 3878523 (Tenn. Ct. App. Aug. 20, 2024) ("*Malone IV*").[1] However, this is our first opportunity to address the merits of the trial court's rulings. Accordingly, we comprehensively summarize the background relevant to our disposition of this appeal.


Appellants, Edward Thomas Autry and Hannah Elizabeth Bleavins (collectively, "Attorneys"), are attorneys who practice with Williams McDaniel, PLLC, in Memphis. Appellee Jackson is Ms. Malone's only (adult) child. In November 2014, Ms. Malone retained Attorneys to prepare her estate planning documents, including a DPOA and a Durable Power of Attorney for Healthcare ("healthcare DPOA"). In September 2018, she updated those documents and named Attorneys as her attorneys-in-fact for financial affairs

---

[1] Appellants also filed an application for extraordinary appeal pursuant to Tennessee Rule of Appellate Procedure 10 in the underlying case. In January 2024, this Court denied their application. *Malone IV*, 2024 WL 3878523, at *1. In December 2023, Appellants filed an accelerated application for permission to appeal *Malone I* to the Tennessee Supreme Court. The Supreme Court denied their application in January 2024. *Id*. at *4.

and attorneys-in-fact for healthcare. In her 2018 healthcare DPOA, Ms. Malone appointed her attorneys-in-fact to act as her guardian or conservator should the need arise. In April 2018, Ms. Malone also retained Attorneys to represent her in post-divorce contempt proceedings filed in the Shelby County Circuit Court against her former husband, Thomas Franklin Malone, Jr. ("the post-divorce action"). In the post-divorce action, Ms. Malone alleged that Mr. Malone had failed to pay several million dollars in past due alimony. *Malone I*, 2023 WL 8454618, at *1.

In November 2021, Ms. Malone suffered an unfortunate healthcare event, and Attorneys exercised their authority under the 2018 DPOAs to provide for her care. In November 2022, Attorney William L. Bomar notified Attorneys that he had been retained to represent Ms. Malone and informed them that Ms. Malone had revoked the 2018 DPOAs and executed DPOAs in favor of Ms. Jackson ("the 2022 DPOAs"). Additionally, attorney David Wade notified Attorneys that he represented Ms. Jackson and instructed them not to contact either Ms. Jackson or Ms. Malone. *Id.*

On November 22, 2022, Attorneys filed a petition in the Shelby County Probate Court ("trial court") seeking an emergency conservatorship of Ms. Malone's person and property ("the emergency action"). On the same day, the trial court found a likelihood of substantial harm to Ms. Malone and entered an *ex parte* order that appointed Attorneys to act as emergency conservators. The trial court declared void Ms. Malone's revocation of the 2018 DPOAs and execution of the 2022 DPOAs. The trial court appointed Appellee Paul Neil Royal to serve as Ms. Malone's attorney *ad litem* and Laura Mason to serve as her guardian *ad litem* in the emergency action. *Id.*

Due to the mandatory time constraints established by Tennessee Code Annotated section 34-1-132(e), on January 6, 2023, the trial court entered an order to terminate the emergency conservatorship without prejudice. In its order, the court ruled that the 2018 DPOAs were valid, and the 2022 documents were void. It also stated that the judgment was not final. Ms. Jackson filed motions to alter or amend the trial court's November 2022 and January 2023 orders. In February 2023, the trial court entered a second order closing the emergency conservatorship and declaring the order final pursuant to Tennessee Rule of Civil Procedure 54.02. The court denied Ms. Jackson's motions to alter or amend, and in March 2023, Ms. Jackson filed a notice of appeal to this Court. *Id.* at *2.

In January 2023, while the emergency action was pending, Attorneys filed the current permanent conservatorship action, and Ms. Jackson filed a counter-petition in

March 2023 ("the permanent action").[2]  The trial court appointed Appellee Janelle Eskridge to serve as attorney *ad litem*, and Ms. Mason continued to serve as guardian *ad litem*. Additionally, in February 2023, the trial court "assumed" jurisdiction of the post-divorce action.[3]  It is apparent from the record that the three actions were heard in concert, and the proceedings became increasingly contentious.

On May 18, 2023, Attorneys filed their first motion to recuse the trial judge.  The trial court denied the motion, and Attorneys filed a Rule 10B appeal to this Court.  On June 14, 2023, this Court entered an order to stay the proceedings in the trial court and expressly prohibited the trial court from "entering any dispositive orders" in the case.  On October 10, 2023, this Court entered an order partially lifting the stay to permit the trial court to adjudicate Attorneys' "May 2, 2023" pending motion to amend.

By order entered on October 31, 2023, the trial court noted that Attorneys did not file a motion to alter or amend on May 2, 2023.  It construed the order to require adjudication of Attorneys' May 8, 2023, motions to alter or amend filed in both the conservatorship action and the post-divorce matter.  The trial court stated:

> The Motions to Alter or Amend filed on May 8, 2023 are inextricably linked to the issues raised in the Motions to Alter or Amend filed on January 10, 2023 in the Emergency Conservatorship, Docket No. PR-24346; filed on June 5, 2023 in the Conservatorship; and filed on June 5, 2023 in the post-divorce matter.

The trial court concluded that the October 10 order required it to adjudicate the five pending motions in the three actions in "the interest of judicial economy and in the best interest of [Ms.] Malone . . . ."  The trial court partially granted the motions, set aside its relevant findings of fact and rulings—including those contained in its January 6, 2023, order—and

---

[2]  Jeffrey Wells Jackson, Jr., Elizabeth Davis Jackson, John Parker Jackson, Valerie Harwood, Alicia Kelley and Teresa Rando were named joint-petitioners in the March 2023 counter-petition.  The joint counter-petitioners are not parties to this appeal.  Therefore, we will reference Ms. Jackson as the counter-petitioner.

[3] On February 22, 2023, a "Sua Sponte Order Transferring Case to Probate Court" was entered in Circuit Court Division XIII.  An "Amended Sua Sponte Order Transferring Case to Probate" was entered March 8, 2023, nunc pro tunc to February 23, 2023.

stated that it would adjudicate the "substance of the [m]otion[s] . . . after [an] evidentiary hearing."[4]

On December 6, 2023, this Court issued its opinion in *Malone I*. The majority affirmed the trial court's judgment denying Attorneys' motion to recuse and lifted the stay. *Malone I*, 2023 WL 8454618, at *14. Attorneys sought permission to appeal to the Tennessee Supreme Court. The Supreme Court denied Attorneys' application, and the appellate mandate was filed in the trial court on January 30, 2024.

In the meantime, on December 7, 2023, Ms. Jackson filed an emergency motion in the trial court to clarify Ms. Malone's status. In her motion, Ms. Jackson submitted that the dispute between her and Attorneys "created untenable confusion" among Ms. Malone's health care providers regarding who was authorized to act on Ms. Malone's behalf. By order entered on December 11, the trial court found good cause to set an evidentiary hearing and set Ms. Jackson's motion to be heard on December 13. The trial court also entered an order discharging the guardian *ad litem* and attorney *ad litem*, and an order setting aside all prior orders in the emergency action. *Malone IV*, 2024 WL 3878523, at *21. On December 12, Attorneys moved the court to set a hearing date after December 19, as required by Rule 6 of the Tennessee Rules of Civil Procedure. At 11:50 p.m. on December 12, Attorneys filed a second motion to recuse and asked the trial court to set a hearing on their motion.[5]

On December 13, the trial court commenced the scheduled hearing of Ms. Jackson's emergency motion. Attorneys did not appear. The trial court did not proceed with the

---

[4] Notwithstanding the June 2023 stay, the trial court conducted proceedings on November 6 and entered orders thereon on November 7 and November 15. Attorneys filed motions in this Court to void the trial court's orders and for a writ of mandamus. On November 27, 2023, this Court entered an order in the first Rule 10B appeal and concluded that "the trial court had 'properly exercised its limited adjudication when it ruled on all five (5) pending motions to alter or amend in its October 31, 2023 order . . . .'" *Malone IV*, 2024 WL 3878523, at *2. In the same order, the *Malone I* court determined that the November 6 status conference and evidentiary hearing "were proceedings outside the scope of the trial court's authority as set forth in the limited Remand Orders entered in the Extraordinary Appeals." *Id*. at n.5. The *Malone I* court "declared that the trial court's orders flowing from the November 6, 2023 proceedings were rendered 'void and of no consequence to this Court.'" *Id.*

[5] Rule 10B requires a motion to recuse to be filed at least ten days before trial, absent a showing of good cause. Because *Malone I* was remanded to the trial court on December 6, and on December 11 the trial court set a hearing date of December 13—giving the parties two days' notice—this Court determined good cause existed to waive the timeliness requirement. *Malone IV*, 2024 WL 3878523, at *6-7.

hearing but set Attorneys' second motion to recuse for a hearing at 4:30 p.m. the same day. Attorneys did not appear, and the trial court continued the hearing to the next day. Attorneys again did not appear. The December 14 hearing proceeded without them, and the trial court heard the testimony of Ms. Jackson and Mr. Bomar.[6]

By order entered on December 15, 2023, the trial court found that a dispute existed regarding who was authorized to make decisions for Ms. Malone and that she faced a risk of substantial harm in the absence of action by the court. Accordingly, the trial court found good cause to act and appointed a neutral conservator notwithstanding the pending recusal motion. The court appointed Appellee Janelle Eskridge to serve as interim conservator and ordered Attorneys to transfer any funds held on behalf of Ms. Malone to Ms. Eskridge. On January 9, 2024, the trial court entered an order denying Attorneys' second motion to recuse.

By order entered on January 23, 2024, the trial court removed the interim neutral conservator and appointed Ms. Jackson and Ms. Eskridge to serve as conservators of the person of Ms. Malone, and Ms. Jackson and Mr. Royal as conservators of Ms. Malone's estate (collectively, "Appellees"). In its order, the trial court reiterated its determination that good cause existed to hold an evidentiary hearing on December 14, 2023, notwithstanding Attorneys' pending second motion to recuse and Attorneys' failure to appear. The court also determined that holding an additional evidentiary hearing "would cause unnecessary delay and/or needless increase in the cost of litigation." The court found that, upon testimony of Ms. Jackson and Mr. Bomar and "the entire record," the proof established that Ms. Malone is a disabled person and "lacks capacity to make certain decisions for herself." However, the court also found that "while [Ms. Malone] has some dementia and needs a conservator to assist her in making certain decisions concerning her person and property, she is capable of making her wishes known and should be consulted on major decisions." The court found that Ms. Malone revoked the 2018 DPOAs and nominated Ms. Jackson to serve as conservator. In consideration of the priority provisions established by Tennessee Code Annotated section 34-3-103, the trial court determined that it was in Ms. Malone's best interest to appoint Appellees co-conservators. Additionally, the court ordered that Ms. Jackson would have no role or decision-making authority in the

---

[6] From the record, we observe that the trial judge made efforts to contact Attorneys to summon them to the hearing, including personally telephoning them at their Memphis office. The *Malone IV* court concluded that Attorneys waived any objection to Ms. Jackson's testimony at the hearing "by refusing to attend and by intentionally avoiding interactions with the trial court." *Malone IV*, 2024 WL 3878523, at *25.

post-divorce action and Mr. Royal "shall make all the decisions regarding the disposition of the post-divorce matter."[7]

On January 29, 2024, Attorneys filed a Rule 10B interlocutory appeal of the trial court's January 9 order denying their second motion to recuse. On February 12, 2024, Attorneys moved this Court to declare orders entered by the trial court after December 6, 2023, void for lack of subject matter jurisdiction. On February 21, Attorneys filed their notice of appeal of the trial court's January 23 order.

In its March 2024 opinion in *Malone II*, this Court held that the stay imposed in the first Rule 10B appeal remained in place until January 30, when the *Malone I* appellate mandate was filed in the trial court. *Malone II*, 2024 WL 964147, at *1. Noting the appellate courts' limited jurisdiction in a Rule 10B appeal, the *Malone II* court vacated for lack of subject matter jurisdiction the trial court's December 13, 2023, order setting a hearing date; the December 15, 2023, order appointing an interim neutral conservator; and the January 9, 2024, order denying Attorneys' second motion to recuse. *Id*. The Tennessee Supreme Court granted Appellees' accelerated application to appeal and reversed, holding that the stay imposed by this Court in Attorneys' first Rule 10B appeal "did not divest the trial court of subject matter jurisdiction over the case." *Malone III*, 691 S.W.3d at 367.

Upon remand, a majority of this Court affirmed the trial court's denial of Attorneys' second motion to recuse. *Malone IV*, 2024 WL 3878523, at *26. The *Malone IV* court declined to declare void the trial court's December 13 order scheduling a hearing on Attorneys' motion to recuse. *Id*. at *10. The *Malone IV* court also determined that the trial court had articulated good cause to enter its December 15, 2023 order appointing Ms. Eskridge as interim conservator and declined to render the order void. *Id*. at *11.

Attorneys filed an accelerated application for permission to appeal to the Tennessee Supreme Court. By order entered on January 8, 2025, the Supreme Court denied Attorneys' application. However, in the same order, the Supreme Court designated *Malone IV* "Not for Citation" pursuant to Tennessee Supreme Court Rule 4, section E.[8] The

---

[7] In her March 2023 counter-petition, Ms. Jackson prayed for a co-conservatorship and to be excluded from any matter regarding the post-divorce action.

[8] The Tennessee Supreme Court's designation of *Malone IV* as "Not for Citation" means that it has no precedential value and may not be relied on in other cases. *See* Tenn. Sup. Ct. R. 4(E). However, it remains applicable to this case and may be cited here. *See Taylor v. Miriam's Promise*, No. M2020-01509-COA-R3-CV, 2022 WL 1040371, at *11 (Tenn. Ct. App. Apr. 7, 2022) (citations omitted).

Supreme Court also ordered that any further proceedings that may be necessary following the disposition of this current appeal be assigned to a different trial judge.

## II. ISSUES

Attorneys raise nine issues for review, as stated in their brief:

1) Whether the Appellees are bound by the November 22, 2022, and January 6, 2023, Orders previously entered by the trial court in the related case, PR-24346.

2) Whether the trial court erred by not following the November 22, 2022, and January 6, 2023, orders previously entered by the trial court in the related case, PR-24346.

3) Whether the trial court erred by refusing to rule on Appellant's Motion for Judgment on the Pleadings filed April 9, 2023.

4) Whether the trial court erred by refusing to rule on Appellant's Motion to Stay Proceeding Pending Resolution of Appeal in the related case, PR-24346 filed April 9, 2023.

5) Whether the trial court erred by refusing to rule on Appellant's Motion to Disqualify David Wade and the law firm of Martin, Tate, Morrow & Marston, P.C. as counsel for Appellee Jackson filed April 9, 2023.

6) Whether the trial court erred by discharging the guardian *ad litem* and attorney *ad litem* by order entered December 11, 2023.

7) Whether the trial court erred by scheduling an "evidentiary hearing . . . on the issues set forth in the pleadings" with one days' notice to Appellants by order entered December 11, 2023.

8) Whether the trial court erred by conducting an evidentiary hearing while a Motion to Recuse Trial Judge was pending.

9) Whether the trial court erred by failing to appoint Appellants as Conservators for Ms. Malone.

Appellees present eight additional issues:

1) Whether Attorneys waived the defense of *res judicata* by their own affirmative actions, including initiating this action, and inactions, by failing to raise the defense in their pleading.

2) Whether the doctrine of *res judicata* can bar the trial court from performing its continuing statutory duty to protect the best interests of "person with a disability" by removing Attorneys as fiduciaries after hearing proof of Ms. Malone's emergent needs and becoming aware of the extraordinary improvements in Ms. Malone's health, welfare, and enjoyment of life under the court-appointed care of her daughter and co-conservators.

3) Whether Attorneys' failure to raise the doctrine of mutual offensive collateral estoppel constitutes waiver of that issue.

4) Whether the doctrine of *stare decisis* binds the trial court to its temporary orders entered in Malone A, which were later set aside.

5) Whether the statutory bases relied upon by Attorneys for their automatic appointment as conservators are subject to both the trial court's analysis of Ms. Malone's best interests and being set aside for good cause, thereby necessitating an evidentiary hearing.

6) Whether Attorneys' own litigation tactics precluded the trial court from hearing Attorneys' motions.

7) Whether Attorneys have standing to seek disqualification of counter-petitioners' counsel.

8) Whether Attorneys waived their Motion to Stay Proceedings by affirmatively asking the trial court to act.

The dispositive issues, as we perceive them, are:

1) Whether the doctrine of *res judicata* bars reconsideration of issues addressed by the trial court in its November 2022 and January 6, 2023, orders in the emergency action.

2) Whether the trial court erred in failing to set a hearing on Attorneys' motion to disqualify David Wade.

3) Whether the evidence supports the trial court's January 23, 2024, judgment appointing Ms. Jackson and Mr. Royal co-conservators of Ms. Malone's estate and Ms. Jackson and Ms. Eskridge as co-conservators of Ms. Malone's person.

## III. STANDARD OF REVIEW

A conservatorship proceeding requires the trial court to make findings of fact, draw conclusions of law, and make discretionary determinations. *Hall v. Humphrey*, 673 S.W.3d 613, 619 (Tenn. Ct. App. 2023) (citation omitted). Accordingly, several standards of review may be applicable upon appeal. *In re Conservatorship of Bartlett*, No. 2014-02027-COA-R3-CV, 2015 WL 8025912, at *2 (Tenn. Ct. App. Dec. 4, 2015) (citation omitted). We review the trial court's findings of fact *de novo* upon the record with a presumption of correctness. Tenn. R. App. P. 13(d). We review the trial court's conclusions on questions of law *de novo* with no presumption of correctness. *Hall*, 673 S.W.3d at 619. We will uphold a trial court's discretionary rulings "'so long as reasonable minds can disagree as to propriety of the decision made.'" *Id.* (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000) (additional citation omitted)). Upon review, "an appellate court does not second-guess the trial court or substitute its judgment for that of the trial court." *Youree v. Recovery House of E. Tenn., LLC*, 705 S.W.3d 193, 202 (Tenn. 2025). Rather,

> [a]n abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.

*Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (citations omitted).

However, this deferential standard does not "'immunize a lower court's decision from any meaningful appellate scrutiny.'" *Id*. A trial court "must take the applicable law and the relevant facts into account" when making a discretionary determination. *Id*. The appellate court must review the trial court's "underlying factual findings" under the preponderance of the evidence standard. *Id*. at 525. However, we also must determine

"whether the factual basis for the decision is properly supported by evidence in the record . . . ." *Id.* at 524. We also must consider "whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision," and we review those questions of law *de novo* with no presumption of correctness. *Id*. at 524-25. Additionally, we must determine "whether the lower court's decision was within the range of acceptable alternative dispositions." *Id*. at 524.

With this mixed standard of review in mind, we turn to the dispositive issues in this appeal.

## IV. ANALYSIS

The purpose of a conservatorship proceeding is to "'provide a forum for determining whether a person's ability to remain autonomous has become impaired.'" *Hall*, 673 S.W.3d at 620 (quoting *In re Conservatorship of Groves*, 109 S.W.3d 317, 329 (Tenn. Ct. App. 2003) (internal citations omitted)). As the *Hall* court recently re-emphasized:

> Because of the value our society places on individual autonomy and self-determination, persons seeking the appointment of a conservator must prove by clear and convincing evidence that the person for whom a conservator is sought is a "disabled person." Tenn. Code Ann. § 34-1-126 (2001). This heightened standard of proof eliminates all serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence. *Walton v. Young*, 950 S.W.2d 956, 960 (Tenn. 1997); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001). Evidence satisfying this standard will produce in the fact-finder's mind a firm belief or conviction regarding the truth of the factual propositions sought to be established by the evidence.

*Id*. If the petitioner demonstrates by clear and convincing evidence that the person for whom the conservatorship is sought is fully or partially disabled and needs the court's assistance, the court must then determine whether a partial or full conservatorship is in the person's best interests. *In re Lawton*, 384 S.W.3d 754, 761 (Tenn. Ct. App. 2012), *perm. app. denied,* (Tenn. Sept. 19, 2012). Because of the societal value placed on individual autonomy and self-determination, the statutes require the court "to choose the least restrictive alternative that will sufficiently protect the respondent." *Id*. (citing Tenn. Code Ann. § 34-1-127) (additional citations omitted). The court must also determine whether appointing the petitioner(s) is in the person's best interests. *Id*.

In their appellate brief, Attorneys assert four primary arguments in support of their assertion that the trial court erred by appointing Appellees to act as Ms. Malone's

conservators. First, they contend that the trial court conclusively determined that the 2018 DPOAs were valid and the 2022 DPOAs void in its November 2022 and January 2023 rulings in the emergency action. They argue that the doctrine of *res judicata* therefore bars reconsideration of the issue in the current case. Second, Attorneys argue that, because the 2018 DPOAs are valid and the 2022 DPOAs void, under Tennessee Code Annotated section 34-6-104, the trial court was required to appoint them conservators absent a finding of good cause or disqualification, which were neither alleged nor proven. Third, Attorneys argue that the trial court's January 23, 2024, order was based on the December 14, 2023, evidentiary hearing, which was held in contravention of Rule 10B. Fourth, Attorneys submit that the "good cause" articulated by the trial court in its January 23, 2024, order was based on the court's October 31, 2023, order, which—in turn—was entered without jurisdiction. Additionally, Attorneys argue that the trial court erred by failing to hold a hearing on their motion to disqualify David Wade as counsel for Ms. Jackson.

In addition to refuting Attorneys' arguments, Appellees argue that the evidence supports the trial court's determination that Ms. Malone was able to make her wishes known when she revoked the 2018 DPOAs and executed the 2022 DPOAs in favor of Ms. Jackson. They contend that the best interests of the respondent/ward are always paramount under the statutory scheme and assert that the trial court's judgment is based upon its determination of Ms. Malone's best interests.

We begin our discussion by noting that the issues Attorneys present for review are largely procedural. As Appellees' counsel observed during oral argument, consideration of Ms. Malone's best interests has been obfuscated by the tortured procedural history of this case. Additionally, we emphasize that, although this Court has considered the history of the case, we have done so within the context of interlocutory appeals as of right under Rule 10B. Accordingly, our jurisdiction was limited to review of the trial court's orders denying Attorneys' motions to recuse. *Malone III*, 691 S.W.3d at 370 (citation omitted). As noted above, this is the first occasion we have had to review the matter on the merits.

Second, it is apparent that the emergency conservatorship action, the permanent conservator action, and the post-divorce matter have been adjudicated together.[9] Indeed, we observe from the record that the trial court held joint hearings concerning the two conservatorship actions and the post-divorce action. Further, Mr. Malone's legal counsel was present at the conservatorship status conferences and briefly addressed the court at the

---

[9] We express no opinion regarding the propriety of the probate court's acquisition of the post-divorce action.

December 14, 2024, evidentiary hearing.[10]  Additionally, related issues have been raised on appeal in the emergency action, which is also pending before this Court.[11]

Third, we impress upon the parties that "the purpose of a conservatorship proceeding is to *protect the person and property of a disabled person.*"  *In re Conservatorship of Clayton,* 914 S.W.2d 84, 90 (Tenn. Ct. App. 1995), *perm. app. denied,* (Tenn. Jan. 22, 1996) (emphasis added).  Therefore, "'a conservator occupies a fiduciary position of trust of the highest and most sacred character.'"  *In re Conservatorship of Hudson*, 578 S.W.3d 896, 911 (Tenn. Ct. App. 2018) (quoting *AmSouth Bank v. Cunningham*, 253 S.W.3d 636, 642 (Tenn. Ct. App. 2006) (additional citations omitted)).  However, notwithstanding a conservator's "most important fiduciary role," it is the court that "is ultimately responsible for the disabled persons who come under its care and protection."  *Clayton,* 914 S.W.2d at 90.  Thus, the Tennessee courts have long emphasized that our primary consideration in a conservatorship proceeding is the best interests of the person for whom a conservatorship is sought.  *Walker v. Graves*, 125 S.W.2d 154, 156 (Tenn. 1941); *In re Conservatorship of Groves*, 109 S.W.3d 317, 329 (Tenn. Ct. App. 2000).

Mindful of this responsibility, we turn first to whether the doctrine of *res judicata* bars reconsideration of validity of the 2018 and 2022 DPOAs.

### A. The Emergency Conservatorship Orders

Attorneys argue that the trial court's February 2023 order in the emergency action was final and the doctrines of *res judicata* and *stare decisis* bind the trial court to the findings and rulings made in its November 2022 and January 6, 2023, orders.[12]  Attorneys assert that those orders conclusively determined 1) Ms. Malone lacked the capacity to

---

[10]  We observe that at the December 14, 2023 hearing, Mr. Malone's legal counsel introduced himself as counsel for "[Mr.] Malone in the companion case to this case[]" and advised the court of Attorneys' whereabouts on that day.

[11] An opinion in the emergency conservatorship action will be filed contemporaneously with this Opinion.

[12]  We note that an appeal is also pending in the emergency conservatorship action.  In that action, the trial court determined that its January 2023 order was not final and entered several subsequent orders.  In December 2023, the trial court set aside its rulings in the emergency action.  On appeal to this Court, Attorneys argue that the trial court did not have jurisdiction to enter orders in the emergency action after Ms. Jackson filed her notice of appeal in March 2023.

revoke the 2018 DPOAs without the court's approval; 2) the 2018 DPOAs are therefore valid; 3) the 2022 DPOAs are void; and 4) Attorneys accordingly were/are authorized to make all medical and financial decisions for Ms. Malone. Attorneys further argue that, under Tennessee Code Annotated section 34-6-104(b), the trial court was required to appoint them conservators in the absence of a finding of good cause to disqualify them. We disagree.

The doctrine of *res judicata* "bars a second suit between the same parties or their privies on the same claim with respect to all issues which were, or could have been, litigated in the former suit." *Jackson v. Smith*, 387 S.W.3d 486, 491 (Tenn. 2012). "The primary purposes of the doctrine are to promote finality in litigation, prevent inconsistent or contradictory judgments, conserve legal resources, and protect litigants from the cost and vexation of multiple lawsuits." *Creech v. Addington*, 281 S.W.3d 363, 376 (Tenn. 2009). The doctrine does not presume "that the final judgment was right or just. Rather, it is justifiable on the broad grounds of public policy which requires an eventual end to litigation." *Moulton v. Ford Motor Co.*, 533 S.W.2d 295, 296 (Tenn. 1976). "'The party asserting a defense predicated on res judicata must demonstrate (1) that the underlying judgment was rendered by a court of competent jurisdiction, (2) that the same parties or their privies were involved in both suits, (3) that the same claim or cause of action was asserted in both suits, and (4) that the underlying judgment was final and on the merits.'" *Napolitano v. Bd. of Pro. Resp.*, 535 S.W.3d 481, 496 (Tenn. 2017) (quoting *Long v. Bd. of Pro. Resp.*, 435 S.W.3d 174, 183 (Tenn. 2014)).

There is no dispute that the trial court is a court of competent jurisdiction or that the requirement of privity between the parties is met in this case. However, as Attorneys acknowledged at oral argument, the trial court conducted no evidentiary hearings in the emergency action. The trial court entered its November 22, 2022 order *ex parte* on the same day Attorneys filed their emergency petition. *Malone I*, 2023 WL 8454618, at *1. Additionally, as noted in *Malone I*, the trial court entered its January 6, 2023 order to "implement[] a process for terminating the emergency conservatorship to comply with the time restraints established in Tennessee Code Annotated § 34-1-132." *Id.* at *2 (footnote omitted). Further, in its January 6 order, the trial court explained that it attempted to set the matter to be heard in December 2022, but the parties could not agree on a date before the holidays. Therefore, "the trial court concluded that it would not be able to complete a hearing on the petition for an emergency conservatorship . . . ." *Id.* Clearly, no issues were—or could have been—decided or tried on the merits in the emergency action.

Additionally, we take judicial notice that an appeal of the trial court's judgment in the emergency action is pending in this Court. *See State v. Lawson*, 291 S.W.3d 864, 869-

- 14 -

70 (Tenn. 2009) (stating that developments in a prior proceeding and matters related to the records of a court are subject to judicial notice by that court). "[A] judgment is not final and *res judicata* where an appeal is pending." *McBurney v. Aldrich*, 816 S.W.2d 30, 34 (Tenn. Ct. App. 1991), *perm. app. denied,* (Tenn. Sept. 3, 1991). The final disposition does not occur until the appellate court enters its judgment. *Freeman v. Marco Transp. Co.*, 27 S.W.3d 909, 913 (Tenn. 2000). Thus, the emergency action is not final for *res judicata* purposes.

We turn next to Attorneys' argument that the doctrine of *stare decisis* bound the trial court to its November 2022 and January 2023 rulings. Attorneys' reliance on this doctrine is misplaced. While the doctrine of *res judicata* promotes finality and "private peace" between the parties with respect to specific claims, *Moulton*, 533 S.W.2d at 296, the purpose of *stare decisis* is to provide "firmness and stability to principles of law." *In re Estate of McFarland*, 167 S.W.3d 299, 306 (Tenn. 2005). *Stare decisis* "promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Payne v. Tennessee*, 501 U.S. 808, 827, 111 S. Ct. 2597, 2609, 115 L. Ed. 2d 720 (1991) (citation omitted). It gives "firmness and stability to principles of law . . . ." *Hooker v. Haslam*, 437 S.W.3d 409, 422 (Tenn. 2014).

Attorneys' argument that the trial court was bound to its earlier rulings by the doctrine of *stare decisis* is not predicated on the construction of any governing principle of law or legal precedent, nor does it implicate the predictable application of the law. Rather, Attorneys merely reiterate their *res judicata* argument. This argument is without merit.

Having determined that the issue of the dueling DPOAs was not determined on the merits in the emergency action, we turn to Attorneys' argument that the trial court erred by not hearing their motion to disqualify Mr. Wade.

## B. Disqualification of David Wade

Attorneys argue that the trial court erred by refusing to hear their April 9, 2023, motion to disqualify Mr. Wade. In their brief, Attorneys assert that a hearing would have demonstrated that Mr. Malone was Mr. Wade's "actual client." They contend that Mr. Malone engaged Mr. Wade to remove Attorneys as Ms. Malone's attorneys-in-fact and petition the court to appoint Ms. Jackson as conservator so that Ms. Jackson "could control the pending post-divorce litigation . . . ." Attorneys argue that Mr. Malone paid all attorneys' fees incurred by Ms. Jackson and submit that "[t]his is an obvious apparent conflict of interest" that requires the disqualification of Mr. Wade and his law firm.

- 15 -

Appellees, on the other hand, argue that Attorneys lack standing to seek disqualification of Ms. Jackson's legal counsel because they are neither clients nor former clients of Mr. Wade. Appellees also assert that the trial court set a hearing on Attorneys' motion (and other pending motions) for July 31, 2023, but the hearing did not occur due to Attorneys' motions to recuse the trial judge, their Rule 10B appeals, and the several orders granting Attorneys' motions to stay proceedings in the trial court. They further submit that Attorneys took no action to have their motion heard following this Court's December 2023 opinion in *Malone I*.[13] Attorneys filed a reply brief but did not address Appellees' argument regarding this issue.

From our review of the record, we note that, in their April 2023 motion to disqualify Mr. Wade, Attorneys asserted that Mr. Malone had "protracted communications with David Wade, directly and through his divorce attorneys, regarding the need for a conservator to be appointed for his former spouse," Ms. Malone. They further argued that these communications "established an attorney-client relationship." Attorneys asserted that:

> It is unconscionable to think that, given the significant and contentious litigation between [Mr.] Malone and [Ms.] Malone in the post-divorce proceedings, David Wade would first represent [Mr.] Malone in his exploration of possible ways to remove [Attorneys] as attorneys for [Ms.] Malone, then agree to represent Ms. Jackson as the purported attorney in fact for [Ms.] Malone, and then further agree to represent Ms. Jackson, [et al.] in their request to appoint [Ms.] Jackson as conservator for [Ms.] Malone.

Attorneys' argument as we understand it is that Mr. Wade's alleged attorney-client relationship with Mr. Malone and his representation of Ms. Jackson creates a conflict of interest.[14]

---

[13] Appellees cite *Devereaux v. Devereaux*, No. E2007-02189-COA-CV, 2008 WL 3850520 (Tenn. Ct. App. Aug 19, 2008) in support of their argument that a party "cannot sit upon his rights in the trial court and then expect relief in the appellate court." We note that *Devereaux* was designated a Memorandum Opinion under Tennessee Court of Appeals Rule 10 and may not be cited or relied upon in any unrelated case.

[14] In their appellate brief, Attorneys do not assert that Mr. Wade violated any other rule of professional conduct, and they do not assert that an ethics complaint has been filed with the Board of Professional Responsibility.

Attorneys argue that the court erred in failing to adjudicate their motion to disqualify David Wade. We must first address whether such an argument may be considered. Standing is a doctrine used by the courts "to determine whether a particular litigant is entitled to have a court decide the merits of a dispute or of particular issues." *Am. C.L. Union of Tenn. v. Darnell*, 195 S.W.3d 612, 619 (Tenn. 2006) (citations omitted). A plaintiff bears the burden of proof to demonstrate three "'indispensable' elements" to establish standing. *Id*. at 620 (quoting *Petty v. Daimler/Chrysler Corp.,* 91 S.W.3d 765, 767 (Tenn. Ct. App. 2002), *perm. app. denied,* (Tenn. Sept. 9, 2002)). First, the plaintiff must demonstrate "a distinct and palpable injury . . . ." *Id*. (citations omitted). Second, the plaintiff must show "a causal connection between the claimed injury and the challenged conduct." *Id*. (citation omitted). Third, the plaintiff must demonstrate that "the alleged injury is capable of being redressed by a favorable decision of the court." *Id*. (citations omitted). "The primary focus of a standing inquiry is on the party, not on the merits of the claims." *Cox v. Shell Oil Co.*, 196 S.W.3d 747, 758 (Tenn. Ct. App. 2005), *perm. app. denied,* (Tenn. May 1, 2006) (citations omitted).

Rule 1.7 of the Tennessee Rules of Professional Conduct governs an attorney's representation of a client whose interests may conflict with those of the attorney or another client. Rule 1.7 provides, in relevant part:

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

- 17 -

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing.

Tenn. R. Sup. Ct. 8, RPC 1.7.

Even assuming Attorneys' allegations regarding Mr. Wade's relationship with Mr. Malone to be true, any injury from a purported conflict under the rule would be to Ms. Jackson, not to Attorneys.[15] Mr. Wade's obligation is to zealously advocate for Ms. Jackson. Mr. Wade does not represent Ms. Malone. Indeed, Attorneys' allegations pertain not to a conflict of interest causing an injury to them—or to Ms. Malone—but to Ms. Jackson's motives for petitioning to be appointed conservator. This is a factor to be considered by the trial court when making its best-interests determination. As the *Malone I* court noted, "[w]hether a conservator has a conflict of interest concerning a particular matter is relevant to what is in the best interest of the ward." *Malone I*, 2023 WL 8454618, at *9 (quoting *AmSouth Bank v. Cunningham*, 253 S.W.3d 636, 645 (Tenn. Ct. App. 2006)).

We recognize that the trial court has not adjudicated this issue. However, standing involves a question of law that we review *de novo* with no presumption of correctness. *Cox*, 196 S.W.3d at 758. Therefore, in the interest of judicial economy, we will resolve the issue even though the trial court did not. *See In re Est. of Link*, No. M2016-02202-COA-R3-CV, 2017 WL 4457591, at *5 n.3 (Tenn. Ct. App. Oct. 5, 2017) (stating that "[j]udicial abstinence on this pure question of law in this appeal would only leave the door open for another potential appeal in which our review would be *de novo* given that the issue is one of law."); *see also City of Lakewood v. Metro Gov't of Nashville and Davidson Cnty.*, No. M2007-01021-COA-R3-CV, 2008 WL 5396241, at *5 (Tenn. Ct. App. Dec. 22, 2008) (stating that addressing issue of law for first time on appeal does not "invade the province" of the trial court's role as finder of fact). In their motion to disqualify Mr. Wade under Rule 1.7 of the Rules of Professional Conduct, Attorneys did not allege a cognizable injury to establish standing to argue the conflict they claim.[16] Because Attorneys' lack standing

---

[15] Attorneys do not allege that Mr. Wade or any other attorney practicing with Martin, Tate, Morrow & Martson represents Mr. Malone in the post-divorce action.

[16] Attorneys are not precluded from exploring whether a conflict exists that would prevent Ms. Jackson from being appointed as conservator.

to argue that Mr. Wade and his firm should be disqualified from representing Ms. Jackson, we find no merit in their argument.

## C. The January 23, 2024 Order

We now turn to the trial court's January 23, 2024 order appointing Appellees to serve as Ms. Malone's permanent conservators. In its order, the trial court stated that Attorneys failed to appear at three hearings despite the court's efforts to accommodate them, ignored the court's notices, and refused to communicate with the court or opposing counsel concerning their failure to appear. The trial court also determined that "[h]olding another evidentiary hearing to determine who should be appointed conservator would cause unnecessary delay and/or needless increase in the cost of litigation." The trial court found that Ms. Malone revoked the 2018 DPOAs and nominated Ms. Jackson to be appointed conservator. Additionally, the court referenced the best-interest analysis required by Tennessee Code Annotated section 34-3-103 and determined that it was in Ms. Malone's best interest to appoint Appellees to serve as her conservators.

In their brief, Attorneys argue that the trial court erred by appointing Appellees to act as Ms. Malone's conservators because the January 23, 2024, order was based on the December 14, 2023, hearing, which was held while their second motion to recuse was pending. They further argue that the trial court's finding of good cause was based on its October 31, 2023, order on Ms. Jackson's motion to amend in the emergency action, which they assert the court entered without jurisdiction. Attorneys also argue that the trial court's conclusion that holding another evidentiary hearing "would cause unnecessary delay and/or needlessly increase the cost of litigation . . . falls far short of the 'good cause' requirement or the 'broad discretion' of the [t]rial [c]ourt to waive certain requirements specified in chapters 1-3 of Title 34." They argue, "[t]he [t]rial [c]ourt cannot waive the principles of due process and substantial justice."

We are not insensitive to the protracted and complex procedural history of this matter or to the trial court's efforts to conduct an evidentiary hearing on December 14, 2023. However, despite the substantial technical record in this case, there is woefully little actual evidence to support the trial court's judgment. It is well-settled that statements of counsel, statements made in pleadings, and arguments in briefs to this Court do not constitute evidence. *Metro. Gov't. of Nashville & Davidson Cnty. v. Shacklett*, 554 S.W.2d 601, 605 (Tenn. 1977); *Greer v. City of Memphis*, 356 S.W.3d 917, 923 (Tenn. Ct. App. 2010). Similarly, "[m]erely attaching a document to a pleading does not place that document in evidence." *Pinney v. Tarpley*, 686 S.W.2d 574, 579 (Tenn. Ct. App. 1984), *perm. app. denied,* (Tenn. Feb. 25, 1985). Additionally, physicians and psychologist

reports that must be filed in conservatorship proceedings must be admitted into evidence in compliance with the Tennessee Rules of Evidence. *Hall*, 673 S.W.3d at 623 (citation omitted). Further, although the record contains the transcript of Ms. Jackson's testimony during an impromptu evidentiary hearing held during a status conference on November 6, 2023, this Court has previously determined that the proceeding was outside the limited scope of the Court's order remanding the case in *Malone I. Malone IV*, 2024 WL 3878523, at *2 n.5. The *Malone I* court declared any orders emanating from that proceeding to be void. *Id.*

Thus, the December 14, 2023 hearing was the only reviewable evidentiary hearing held in the matter. The hearing was exceedingly brief, and it was held with two days' notice. We acknowledge the *Malone IV* court's statement that Attorneys cannot object to Ms. Jackson's testimony at the December 14 hearing where they "refus[ed] to attend and . . . intentionally avoid[ed] interactions with the trial court." *Malone IV*, 2024 WL 3878523, at *25. We also note that this Court has "determined that the trial court properly found good cause to enter the December 13, 2023, order scheduling a hearing regarding the second recusal motion and the December 15, 2023, order appointing an interim conservator of the person and estate of Ms. Malone." *Id*. at 22. However, the *Malone IV* court declined to address Attorneys' motion to void the trial court's January 23, 2024, order or Ms. Jackson's contention that the trial court's rulings were in Ms. Malone's best interest as outside the limited scope of review in a Rule 10B appeal. *Id.* at *9 n.7, *26.

The trial court entered its order granting Appellees' counter-petition approximately one month after appointing Ms. Eskridge to serve as interim neutral conservator. The only reason given for entry of the order was to avoid further delay. As noted, notwithstanding the truncated December 14 hearing, the trial court determined that additional evidentiary proceedings were unnecessary. From our review of the record, we cannot agree.

As discussed above, the petitioner in a conservatorship proceeding must demonstrate by clear and convincing evidence that the person for whom the conservatorship is sought is a disabled person. If the petitioner carries their burden of proof, the trial court must then determine whether a partial or full conservatorship is in the person's best interests. The "[a]ppointment of an emergency guardian or conservator, with or without notice, is not a determination of the respondent's incapacity." Tenn. Code Ann. § 34-1-132(c). We observe that most of the trial court's "findings" in its January 2024 order pertain to the procedural background of the case. However, the trial court implicitly found that Ms. Malone had the capacity to revoke the 2018 DPOAs and execute the 2022 DPOAs, and it explicitly found that Ms. Malone had the capacity to make her wishes known and should be consulted on any "major decisions." Without making further findings regarding the extent of Ms. Malone's decision-making capacity, the court nevertheless

removed all decision-making authority from Ms. Malone and provided Appellees with complete financial and health care decision-making authority.

As also discussed above, *res judicata* did not attach to the trial court's rulings in the emergency action, and further discussion of the trial court's rulings in the emergency action is not necessary. Further, even assuming that Ms. Malone lacked the capacity to revoke the 2018 DPOAs, we disagree with Attorneys that no facts were alleged which could constitute "good cause" justifying the trial court's failure to appoint them conservators under section 34-6-104. Under Tennessee Code Annotated section 34-6-204(a)(2)(B) a trial court "may revoke or amend a durable power of attorney for health care or replace the attorney in fact designated in the power" for good cause. In the context of a conservatorship proceeding, "good cause" is equivalent to a "substantial reason" when determining whether to remove a health care attorney in fact. *In re Conservatorship of Burnette*, No. E2005-01742-COA-R3-CV, 2006 WL 3431935, at * 10-11 (Tenn. Ct. App. Nov. 29, 2006) (citing *Williams v. State,* No. 01-A-01-9206-BC00212, 1993 WL 41162, at *5 (Tenn. Ct. App. Feb. 19, 1993)). Additionally, a court is "not preclude[d] from acting *sua sponte* or upon an *ex parte* application if that court deems that immediate action is in the best interest of the ward." *Id*. at *10. Ms. Jackson's assertion that Ms. Malone was languishing in November 2022 but has notably improved under her care, if demonstrated, could provide a substantial reason to revoke or amend the 2018 DPOA for healthcare. In short, it is "completely within the court's inherent authority and responsibility to act in [the ward's] best interest[s]." *Id*. Like section 34-3-103, section 34-6-104 requires the court to give priority to a person designated in writing by the respondent when appointing a conservator.[17] The section does not dispense with the court's responsibility to act in the respondent/ward's best interests in a conservatorship proceeding.

---

[17] Tennessee Code Annotated section 34-6-104 provides:

> (a) If, following execution of a durable power of attorney, a court of the principal's domicile appoints a conservator, guardian of the estate or other fiduciary charged with the management of all of the principal's property or all of the principal's property except specified exclusions, the attorney in fact is accountable to the fiduciary as well as to the principal. The fiduciary has the same power to revoke or amend the power of attorney that the principal would have had if the principal were not disabled or incapacitated.

> (b) A principal may nominate, by a durable power of attorney, the conservator, guardian of the estate or guardian of the principal's person for consideration by the court if protective proceedings for the principal's person or estate are thereafter commenced. The court shall make its appointment in accordance with the principal's most recent nomination in a durable power of attorney except for good cause or disqualification.

The trial court did not make sufficient findings to support its determination that Ms. Malone had the capacity to revoke the 2018 DPOAs and execute the 2022 DPOAs. It made no findings to support a best-interests determination. From our review of the record, we do not agree with the trial court that additional evidentiary proceedings were unnecessary. Notwithstanding the *Malone IV* court's conclusion that Attorneys' efforts to avoid the trial court on December 14 preclude them from objecting to Ms. Jackson's testimony at the hearing; the brief, unrebutted and untested testimony of Ms. Jackson and Mr. Bomar at a hearing scheduled with two days' notice after the trial court's inexplicable dismissal of the guardian and attorney *ad litem* does not constitute sufficient evidence to support the trial court's January 23, 2024 judgment.

The best interests of Ms. Malone—not those of Attorneys or Appellees or the trial court—is our paramount concern. *See Groves,* 109 S.W.3d at 349 (stating that it is "in the state's *parens patriae* power to serve as protector of incapacitated persons and to take all actions reasonably necessary to promote the incapacitated person's best interests."). Tennessee Code Annotated section 34-1-107(a)(3) allows for waiver of a guardian ad litem "if the court determines the waiver is in the best interests of the minor or person with a disability." Here, the court heard no proof to support that waiver of the guardian ad litem was in the best interests of Ms. Malone, let alone meaningful review of that determination.

---

Tennessee Code Annotated section 34-3-103 provides:

> Subject to the court's determination of what is in the best interests of the person with a disability, the court shall consider the following persons in the order listed for appointment of the conservator:
>
> (1) The person or persons designated in a writing signed by the alleged person with a disability;
>
> (2) The spouse of the person with a disability;
>
> (3) Any child of the person with a disability;
>
> (4) Closest relative or relatives of the person with a disability;
>
> (5) A district public guardian as described by § 34-7-104; and
>
> (6) Other person or persons.

- 22 -

Mindful of our concern for Ms. Malone's best interests, we reverse the trial court's dismissal of the guardian ad litem, vacate the remainder of the trial court's judgment and remand this matter for further proceedings.

## V. CONCLUSION

In view of the foregoing, we vacate the trial court's judgment and remand this case for further proceedings consistent with this opinion. The trial court's dismissal of the guardian ad litem absent a best interests determination is reversed. Pursuant to the Tennessee Supreme Court's January 2025 order, the case is to be transferred to another judge upon remand. Proceedings upon remand shall include the immediate appointment of a guardian ad litem and all those necessary to the trial court's determination of 1) whether a conservatorship for Ms. Malone is warranted; 2) if so, the extent of any conservatorship; 3) the appointment of conservator(s), if necessary, consistent with the statutory requisites and the trial court's best-interest determination; 4) whether Ms. Malone had the capacity to revoke the 2018 DPOAs and execute the 2022 DPOAs; 5) the assignment of fees and costs, and related matters as may be necessary. The trial court may consider new evidence. The appointment of an attorney ad litem shall remain a discretionary decision for the court upon remand. In the interim, for the sake of continuity and to avoid further complicating Ms. Malone's care, Ms. Jackson and Ms. Eskridge shall continue to act as conservators of Ms. Malone's person, and Ms. Jackson and Mr. Royal shall continue to act as conservators of Ms. Malone's estate. However, Ms. Jackson will have no role or decision-making authority in the post-divorce action; Mr. Royal will have decision-making authority in that action, subject to the supervision of the trial court. We urge the parties and the trial court to resolve this matter as expeditiously as possible. Any remaining issues are pretermitted as unnecessary to our disposition of this appeal. Costs on appeal are taxed one-half to Appellees Paul Neil Royal, Lisa Malone Jackson, and Janelle Rachal Eskridge, and one-half to Appellants Edward Thomas Autry and Hannah Elizabeth Bleavins, for which execution may issue if necessary.

s/Valerie L. Smith
VALERIE L. SMITH, JUDGE